EDWIN PLAZA QUIÑONES, querellante y recurrente, *v.* MUNI-CIPIO DE ADJUNTAS, representado por su ALCALDE, HON. ISMAEL RÍOS, querellado y recurrido; EDWIN PLAZA QUI-ÑONES, demandante y recurrente, *v.* MUNICIPIO DE ADJUN-TAS, representado por su ALCALDE, HON. ISMAEL RÍOS TORRES; ASAMBLEA MUNICIPAL DE ADJUNTAS, represen-tada por su PRESIDENTE, HON. JOSÉ A. RULLÁN, deman-dados y recurridos.

*Número:* R-75-245      *Resuelto:* 28 de mayo de 1976

*Frank Rodríguez García,* abogado del recurrente; *Serafín Rosado Santiago,* abogado de los recurridos.

SENTENCIA

El tribunal de instancia concedió al demandante-recu-rrente la suma de $1,000 por concepto de los daños y perjui-cios sufridos por éste como consecuencia de su despido como empleado del Municipio de Adjuntas sin haberse observado las disposiciones de ley al efecto y, aunque repuesto en su posición varias semanas más tarde, consideró que había sido objeto de discrimen al habérsele sometido a efectuar ciertas tareas no compatibles con las funciones de su cargo que le ocasionaron bochorno ante sus amistades. El demandante acudió ante nos para que se aumentara la cuantía de daños concedídale.

Expedimos orden dirigida al Municipio recurrido para que mostrara causa por la que no debíamos expedir el auto solicitado y aumentar la compensación a la suma de Tres Mil Dólares (3,000). El recurrido compareció ante nos pero no nos ha convencido su oposición a la expedición del auto.

Se expide el auto solicitado y se modifica la sentencia dictada por la Sala de Utuado del Tribunal Superior en 3 de junio de 1975, en el caso civil 73-1244, Edwin Plaza Qui-

ñones v. Municipio de Adjuntas, y se modifica la misma para aumentar la compensación al demandante-recurrente a la suma de Tres Mil Dólares ($3,000) por los daños sufridos y así modificada se confirma.

Así lo pronunció y manda el Tribunal y certifica la Secretaria Interina. El Juez Asociado Señor Díaz Cruz disintió en opinión separada con la cual concurren los Jueces Asociados Señores Rigau y Torres Rigual. El Juez Asociado Señor Irizarry Yunqué no intervino.

(Fdo.) Carmen Lesbia Colón

*Secretaria Interina*

—O—

Opinión disidente del Juez Asociado Señor Díaz Cruz en la cual concurren los Jueces Asociados Señores Rigau y Torres Rigual.

San Juan, Puerto Rico, a 28 de mayo de 1976

El recurrente empleado municipal clasificado como oficinista de obras públicas, presentó demanda reclamando daños y perjuicios contra el municipio de Adjuntas, fundada en alegado discrimen político invocando la Constitución de Puerto Rico y específicamente la Ley Núm. 382 de 11 de mayo de 1950 (29 L.P.R.A. sec. 136).[1] Alega este empleado de obras

---

[1] Sección 136. Intervención con afiliación política—Responsabilidad civil.

"Todo patrono que despida, suspenda, rehúse restituir en su trabajo, reduzca el salario, rebaje en categoría, aumente las horas de labor o imponga o intente imponer condiciones de trabajo más onerosas a un empleado o ex empleado suyo, o discrimine en cualquier forma o amenace cometer contra él cualquiera de tales actos porque esté afiliado a determinado partido político incurrirá en responsabilidad civil por suma igual al doble del importe de los daños que el acto haya causado al empleado o ex empleado; o por una suma no menor de cincuenta (50) ni mayor de mil (1,000) dólares, a discreción del tribunal, si no se pudieren determinar daños pecuniarios o el doble de éstos fuere inferior a la suma de cincuenta (50) dólares; . . . ."

públicas municipales de uno de nuestros municipios de menos recursos que se ha discriminado contra él, presuntivamente imponiéndole "condiciones de trabajo más onerosas" porque un supervisor del garage municipal le ordenó pintar una oficina de rojo y blanco lo que hizo por dos días hasta que el Alcalde se enteró, y molesto revocó la orden y en vez ordenó cubriera el rojo con gris, en cuyo proceso fue mortificado por bromas y rechiflas de algunos espectadores; que le ordenaron que ayudara a otro empleado a traer unos drones en un camión de la Hacienda Salicetti al garage municipal para utilizarlos como zafacones y después hubo de sacarle las tapas con marrón y cortafrío; que le ordenaron limpiar una cisterna que suple agua al comedor escolar de una escuela; que solicitaron de él que reparara un inodoro de la Alcaldía de cuya labor se le excusó porque el actor dijo no saber de plomería, por lo que se le encargó barrer y limpiar el garage municipal que dejó "como un espejo"; que hubo de ayudar a un mecánico a reparar una pala mecánica (*bulldozer*); y siendo conductor autorizado otro día lo enviaron en jeep al Centro Médico de San Juan llevando para análisis la cabeza de un caballo que había mordido una vecina, viaje que hizo bajo protesta, siendo su objeción "que no estaba acostumbrado a manejar vehículos de motor a San Juan" (Exposición de la Prueba, pág. 6) y que en una ocasión se le ordenó manejar una camioneta de recoger basura y hubo de ayudar al peón a levantar los drones al vaciarlos en el vehículo y donde no había drones, ayudarlo en el recogido con pala.

La contención del demandante es que se sintió humillado, deprimido y expuesto a la verguenza pública por no ser dichas encomiendas propias de su dignidad de oficinista, aun cuando evidentemente todas dichas gestiones y labores se hallan dentro del ámbito de un departamento de obras públicas municipal, al cual servía. El 15 de agosto de 1973, luego de pagársele dos quincenas para que buscara otro trabajo y una más por vacaciones, el demandante quedó despedido de su trabajo

del que fue privado 43 días, porque en 27 de septiembre de 1973 el Alcalde lo repuso con paga retroactiva a su despido.

El juez sentenciador, concluyendo[2] que "algunas de estas tareas las había realizado [el demandante] anteriormente bajo la anterior Administración Municipal y ocupando la referida plaza de secretario" condenó al municipio a indemnizarle en la cantidad de $1,000 más $400 de honorarios de abogado. Recurre el demandante señalando como único error que "la lesión a la dignidad del peticionario" no queda compensada con $1,000.00.

Disiento del criterio de la mayoría que aumenta la indemnización a $3,000.00. La decisión del juez de instancia es correcta en su evaluación de todas las circunstancias que rodean el caso y se ajusta en el ejercicio de la discreción que le confiere el estatuto a uno de los límites[3] fijados en el mismo al disponer que el patrono que discrimine "incurrirá en responsabilidad civil por suma igual al doble del importe de los daños que el acto haya causado al empleado o ex empleado; o por una suma no menor de cincuenta (50) ni mayor de mil (1,000) dólares, a discreción del tribunal, si no se pudieren determinar daños pecuniarios o el doble de éstos fuere inferior a la suma de cincuenta (50) dólares." (Ley Núm. 382, citada.)

La prueba revela que el énfasis del demandante recae más que en el aspecto de discrimen, en lo que él considera un agravio a su dignidad de empleado público por no ser propios de un oficinista o un secretario de obras públicas realizar las urgentes labores a él encomendadas. Esta es una actitud recién adquirida en el recurrente quien había realizado trabajos similares anteriormente sin desdoro ni protesta. Acusa ade-

---

[2] Conclusión que no impugna el recurrente, que limita su recurso a pedir mayor compensación.

[3] Mil dólares es también límite en acciones civiles basadas en discrimen por razón de edad, raza, color, religión, sexo, origen o condición social. Ley Núm. 50 de 30 de mayo de 1972 (29 L.P.R.A. sec. 146).

más una falsa sensiblería que no armoniza con las exigencias del servicio público bajo un régimen de austeridad. La prueba no estableció que hubiera otro personal disponible para realizar los trabajos asignados al recurrente y que se le escogiera precisamente a él, en vez de utilizar otro empleado de "menor dignidad". El emocionado alegato del recurrente ignora que ni Jesús ni el Papa han perdido dignidad por lavarle los pies a sus discípulos.

Gran parte de la dignidad de un empleado público radica en servir sin regateos al pueblo que necesita esos servicios. El no hacerlo es lo que resulta indigno. ¿Qué clase de administración pública tendremos cuando cada empleado pueda levantar una excepción de dignidad a las órdenes de trabajo aplicando su propio concepto equivocado de tan alto atributo de la persona?

En otra época la secretaria de la Colecturía de Rentas Internas y en ocasiones hasta el propio Colector, barrían la oficina a la vista del público, y no hubo tiempo en que fuera mayor el respeto y la estimación de esta sociedad para sus servidores. La dignidad del ser humano es un valor respetable, inviolable según nuestra constitución, que está muy por encima de remilgos y falsa vanidad en detrimento del servicio público.

El municipio de Adjuntas no debe responder por el grotesco sentido de humor y el pobre estilo de algunos de sus vecinos que se burlaron del demandante. En la misma cantidad de $2,000 adicionales que parece aliviar las penas del demandante se reducen los recursos de este municipio pequeño para atender la salud, la seguridad y el bienestar de miles de sus residentes que han necesitado de que alguien en la Alcaldía pinte, asegure agua limpia para el comedor escolar, recoja la basura y facilite la determinación de rabia en el caballo que mordió una vecina.

Por años el azaroso y difícil desarrollo económico del país ha inducido la adición de un número considerable de emplea-

dos a la nómina gubernamental, más que para nutrir el servicio público, para resolver el problema de desocupación del designado. Una sociedad que así atiende al bienestar personal de los favorecidos para servirle tiene derecho a esperar dedicación y lealtad, en vez de voracidad litigiosa; consciencia de que los escasos recursos fiscales, insuficientes para atender las múltiples urgencias de la administración pública, no deben desviarse para enriquecer el patrimonio particular de un individuo. El afán litigioso no es virtud ennoblecedora. En el servidor público es excepcional negación de todo principio de lealtad al bien común.

No es este el caso del empleado contra el cual se monta un plan de deliberado discrimen para humillarlo. El Municipio hubiese abdicado su compromiso primario de haber dejado sin atender, por falta de personal disponible en el momento, las necesidades públicas para las cuales reclutó los servicios del recurrente, en forma accidental e interina, máxime cuando las encomiendas que se le hicieron no eran para él ni nuevas ni extrañas pues de buen grado las había ejecutado en ocasiones anteriores. El interés propietario que en su empleo pueda tener una persona no es franquicia para negar su concurso a labores accidentales o de emergencia en circunstancias que surgen tanto en el servicio público como en la empresa privada, permaneciendo impasible en reposada dignidad mientras la sociedad padece su estulticia.

Confirmaría, sin modificar, la sentencia recurrida que responde a un juicioso balance de todos los hechos de este caso producto de una discreción ejercitada dentro del marco económico de la legislación especial que autoriza la acción. Este Tribunal no debe intervenir con la discreción del juzgador cuando no ha habido abuso de esa facultad.