CARLOS J. PIZARRO y OTROS, demandantes y recurrentes, *v.* MUNICIPIO DE CAROLINA y HON. ROBERTO IGLESIAS, ETC., demandados y recurridos.

*Número:* R-79-152      *Resuelto:* 17 de mayo de 1982

*Luis Muñoz Rivera* y *José Aulet*, abogados de los recurrentes; *Carlos H. Dapena Roig*, *José Enrique Amadeo* y *Tomás Sandoval Cruz*, abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Ochenta y un (81) obreros que fueron cesanteados por el ejecutivo municipal de Carolina, reclamaron el derecho a no ser destituidos sin justa causa conforme la Ley Municipal —Núm. 142 de 21 de julio de 1960— y violación del derecho constitucional a no ser objeto de discrimen político. Solicitaron judicialmente la reposición en sus puestos, paga

atrasada y daños mentales. El tribunal declaró con lugar la demanda respecto a cuatro (4), desestimándola en cuanto a los setenta y siete (77) restantes, quienes recurren ante este Tribunal. Trabajaban en el municipio en calidad de jornaleros, pues cobraban a base de jornales diarios. Se desempeñaban en labores de mantenimiento y limpieza de carreteras y comprendían choferes, mecánicos, operadores de equipo pesado, etc.

Según se alega, debido a la precaria situación económica que sufría el municipio y el consiguiente sobregiro en aumento de la partida presupuestaria destinada al pago de jornales, el recién instalado alcalde, Hon. Roberto Iglesias —siguiendo recomendaciones al efecto— notificó a un gran número de jornaleros el 18 de marzo de 1977 que quedarían cesantes efectivo el 15 de abril de 1977.[1] Con posterioridad a esta notificación, las cesantías fueron dejadas sin efecto en virtud de unos esfuerzos dirigidos a dividir y alternar el trabajo entre los grupos de jornaleros. Estos esfuerzos resultaron infructuosos, pues ellos protestaron al no poder ser acreedores a recibir compensación por desempleo durante el tiempo en que no les correspondía trabajar. Además, el déficit continuó aumentando hasta alcanzar la cifra de $2,259,218.28. En consecuencia, el alcalde ordenó al Director del Departamento de Obras Públicas municipal que preparara una lista de empleados a ser suspendidos "de conformidad con las necesidades del servicio y la eficiencia de [los empleados]". Luego de preparada dicha lista, el 15 de abril de 1977 quedaron cesantes, sin formulación de cargos ni vista, trescientos sesenta y ocho (368) jornaleros a los que se les envió una carta similar a la antes mencionada.[2]

---

[1] La carta cuya copia los recurrentes incluyeron como apéndice 11 en el recurso, tenía como fecha de efectividad el 1ro de abril de 1977. El modelo reproducido por el tribunal sentenciador en sus determinaciones de hecho estaba fechado el 15 de abril.

[2] Esta segunda carta fechada 15 de abril de 1977 era efectiva inmediatamente.

Según el tribunal sentenciador, la prueba no estableció que no se siguieron los criterios de "necesidad del servicio y la eficiencia de los empleados" en la preparación de la lista de los que habrían de quedar cesantes.([3]) Determinó además que todos los demandantes pertenecían al Partido Popular Democrático (P.P.D.), se manifestaban como tales, y que no existía evidencia que indicase cuál era la afiliación política de los restantes jornaleros que fueron dejados cesantes junto a ellos, ni la de los quinientos veintidós (522) que conservaron su trabajo. "Tampoco aquella, de suficiente valor probatorio, que nos permita concluir que los demandantes fueron sustituidos en sus trabajos por otros del P.N.P."

A base de esas determinaciones fácticas el foro de origen concluyó que los setenta y siete (77) jornaleros recurrentes eran empleados irregulares que de acuerdo a la Ley Municipal podían ser cesanteados sin formulación de cargos o determinación de justa causa, y que "en ausencia de discrimen contrario a la protección constitucional, la existencia de un motivo racional que justifique el despido es suficiente para validarlo". Asimismo estimó que habiéndose probado la existencia de causa razonable —la difícil situación económica por la que atravesaba el municipio—, y sin haberse demostrado a cabalidad la motivación discriminatoria, "venimos obligados a decretar la legalidad del despido de los demandantes". Con respecto a los otros cuatro (4) jornaleros, resolvió que, por llevar más de treinta (30) años trabajando, habían adquirido un *status* equivalente al de empleados regulares y debieron haber sido excluidos de la lista de cesanteados.

---

([3]) Se manifestó así:

"No conocemos, en relación a [dichos criterios], la situación y circunstancias de los demandantes en comparación con los restantes cesanteados con ellos; ni la de todos los 368 cesanteados en comparación con los que permanecieron en su trabajo, por lo que no estamos en condiciones de formular hecho concreto al respecto."

Los recurrentes apuntan cuatro errores que podemos agrupar en dos cuestiones, a saber: (1) si al ser despedidos por motivos económicos en la forma en que se hizo, fueron violados sus derechos estatutarios sobre su empleo; y (2) si en la negativa, si en efecto se trató de cesantías por motivos económicos o probaron los demandantes que las cesantías obedecieron a motivaciones políticas.

## I

Al resolver la primera cuestión, el tribunal de instancia descansó en nuestra decisión en *Báez Cancel* v. *Alcalde Mun. de Guaynabo*, 100 D.P.R. 982 (1972), en el sentido de que los empleados irregulares municipales podían ser destituidos a discreción del alcalde —sin mediar razón o formulación de cargos— siempre que no se tratase de destitución por motivos políticos. Ellos alegan que independientemente de su clasificación como jornaleros, en vista de que llevaban a cabo labores propias de empleados regulares, gozaban de la protección estatutaria del Art. 93 de la Ley Municipal.[4] Dicho foro, como ninguna de las partes, no consideró los efectos de la nueva Ley de Personal, Núm. 5 de 14 de octubre de 1975. Únicamente el municipio recurrido alude a la cuestión en su alegato al señalar que los jornaleros no son "del grupo de servidores que caen bajo la clasificación que tiene la protección, bien de la Ley Municipal o bien de la [nueva] Ley de Personal". Argumenta además que la Ley de Personal permite cesantear a unos empleados regulares por eliminación de puestos por falta de trabajo o fondos. Analicemos estos planteamientos.

Nada hay en la Ley de Personal que indique que la misma no se extiende a empleados en la categoría de jornaleros. Por el contrario, el estatuto es amplio. La Sec.

---

[4] En lo pertinente reza:

"Los funcionarios y empleados municipales podrán ser destituidos por el Alcalde, por justa causa, previa formulación de cargos y previa audiencia señalada con diez (10) días de anticipación. 21 L.P.R.A. sec. 1553.

2.1, inciso 2 (3 L.P.R.A. sec. 1311(2)), consagra como uno de los postulados de la política pública que pretende hacer efectiva la Ley el que "*todos* los empleados públicos, sean éstos empleados estatales, *municipales*, o de corporaciones públicas estarán cubiertos por un solo sistema de personal, establecido para hacer cumplir el principio de mérito. . .". (Énfasis suplido.)

■ En consonancia con el objetivo de "[l]ograr que la administración pública se rija por criterios de la mayor uniformidad, equidad, y justicia", [5] la Ley —Sec. 5.9— limita las clasificaciones de empleados a empleados de confianza y de carrera. 3 L.P.R.A. sec. 1349. Los de carrera comienzan como probatorios y luego se convierten en regulares —Sec. 4.3. 3 L.P.R.A. sec. 1333(10). La Ley permite además el reclutamiento y selección de empleados transitorios —Sec. 4.3, incisos (11) y (12), 3 L.P.R.A. sec. 1333(11) y (12). [6] La categoría de empleados irregulares no está reconocida en la nueva ley.

■ Por otro lado, la disposición sobre el *status* que adquirían los empleados al entrar ésta en vigor consigna que los empleados municipales serían clasificados como de carrera o de confianza según los criterios de ley, sin establecer otras distinciones —Sec. 9. 3 L.P.R.A. sec. 1421(8).

---

[5] Sec. 2.2(1), 3 L.P.R.A. sec. 1312(1).

[6] "(11) Se podrá establecer mediante reglamento procedimientos especiales de reclutamiento y selección para puestos de trabajadores no diestros o semidiestros, para puestos de duración fija, para programas financiados con fondos federales o especiales, cuando no se disponga de registros de elegibles apropiados para determinadas clases de puestos y la *urgencia* del servicio a prestarse *lo justifique*, y para becarios de programas de adiestramiento para el servicio público que hayan sido seleccionados mediante un proceso de competencia." (Énfasis suplido.)

"(12) Las personas nombradas en puestos de duración fija tendrán status transitorio. La duración de estos nombramientos corresponderá al período por el cual se cree el puesto. Podrán efectuarse nombramientos transitorios en puestos permanentes según se determine mediante reglamento."

Notamos, pues, que una vez aprobada la nueva Ley de Personal no se justificaba mantener a estos empleados como jornaleros. El municipio debió haber procedido a establecer los puestos regulares o transitorios que fuesen necesarios de conformidad con los criterios dispuestos en la Sec. 4.2(7). 3 L.P.R.A. sec. 1332(7).

■ En conclusión, como único podría sostenerse que a los jornaleros recurrentes no les aplicaba la Ley de Personal, sería interpretando forzadamente que eran contratistas independientes y no empleados del municipio, lo cual no está sostenido por la prueba sobre la naturaleza de sus labores y de sus relaciones con el municipio.

## II

■ Resuelto que los jornaleros recurridos eran empleados públicos cubiertos por la Ley de Personal de 1975 al momento de ser cesanteados de sus puestos, procede que examinemos si se les violaron los derechos de retención de empleo concedidos por dicha ley.[7] La Sec. 4.6(6), 3 L.P.R.A. sec. 1336(6), según interpretada por este Tribunal en *Delbrey* v. *Municipio de Carolina*, 111 D.P.R. 492 (1981), dispone que podrá separarse del servicio a cualquier empleado por eliminación del puesto por falta de trabajo o fondos, siempre y cuando se haga siguiendo lo establecido en reglamento al respecto. Este último debe guardar conformidad con el Reglamento de Personal: Áreas Esenciales al Principio de Mérito, Sec. 9.3, el cual requiere: (1) que cada autoridad nominadora establezca y notifique a los empleados un método de cesantías a seguirse cuando

---

[7] De ordinario correspondería esta evaluación a la Junta de Apelaciones del Sistema de Administración de Personal (JASAP). Sin embargo, la cuestión de derecho no fue levantada por las partes en instancia, ni ante este Tribunal. En circunstancias como éstas, la Ley no opera para privar a este Tribunal de su jurisdicción revisora general. Ley de Personal, sec. 7.14 (3 L.P.R.A. sec. 1394). *Cf. Pedraza Rivera* v. *Collazo Collazo*, 108 D.P.R. 272 (1979); *Pierson Muller I* v. *Feijoó*, 106 D.P.R. 838 (1978); *Febres* v. *Feijoó*, 106 D.P.R. 676 (1978); *Otero Martínez* v. *Gobernador*, 106 D.P.R. 552 (1977).

éstas vayan a ser necesarias; (2) que se tome en cuenta la eficiencia y el tiempo en el servicio; y (3) que se notifique a cada empleado que vaya a ser cesanteado con 30 días de antelación.

■ Toda vez que estos requisitos amparan tanto a los empleados transitorios como a los probatorios y a los regulares, no es necesario determinar en cuál de estas categorías caían los recurrentes. No podían ser cesanteados en ausencia del requerido plan de cesantías. La lista de empleados a ser separados preparada por el director de la división para la cual trabajaban no constituye un cumplimiento sustancial de dicho requisito, pues en ella: (a) no hay constancia de los puestos y el número a ser eliminado; y (b) no contiene evaluación comparativa en virtud de los criterios de eficiencia y tiempo en el servicio de cada empleado en las distintas clases de puestos, a base de lo cual se determinaría quiénes habrían de ser cesanteados y quienes habrían de ser retenidos.

El presente caso dramatiza el propósito y la importancia de este requisito. Independientemente de cuán justificadas pudieran haber estado unas cesantías desde el punto de vista económico, la política pública a favor de la implementación del sistema de mérito exige que haya constancia de que al eliminarse uno o más puestos en una clase se dejarán cesantes y serán retenidas las personas indicadas de acuerdo con los criterios objetivos que el sistema de mérito encarna. Es igualmente vital que todos los empleados públicos posean conocimiento previo del método a seguirse para que puedan defender adecuadamente sus derechos, los cuales son relativos a los derechos de los demás. La ausencia de constancia clara, objetiva y difundida de los criterios para determinar quiénes habrán de quedar cesantes crea inseguridades y siembra dudas no sólo sobre la legitimidad de cada cesantía particular, sino sobre la validez y necesidad de la decisión de decretar cesantías en general. Ello, a su vez, fomenta la profusión

de pleitos y causa erosión y disgusto entre los empleados y es contrario a los objetivos de la Asamblea Legislativa en lograr la mayor uniformidad, justicia, equidad, armonía, satisfacción y continuidad, y regularidad de los servicios públicos posibles. Sec. 2.2. (3 L.P.R.A. sec. 1312).

Esta decisión que resuelve que las cesantías fueron decretadas sin observarse la Ley de Personal y su reglamento, guarda íntima relación con la tesis de que las mismas obedecieron a motivos discriminatorios. Todos eran afiliados al P.P.D. Precisamente el incumplimiento de los criterios *objetivos* exigidos por la Ley y su reglamento para implementar válidamente cesantías por razones económicas tiende a sostener su carácter discriminatorio. En consecuencia, los restantes setenta y siete (77) recurrentes tienen derecho a ser reempleados y a recibir los jornales dejados de percibir con los descuentos autorizados en ley. [8]

*Se dictará la correspondiente sentencia.*

El Juez Asociado Señor Díaz Cruz concurre en el resultado sin opinión.

---

[8] El tribunal sentenciador determinó correctamente que no se probaron los daños mentales alegados en la demanda.