Oscar Olivieri Morales y Otros, demandantes y recu-
rrentes, *v.* Jorge A. Pierluisi y Otros, demandados y
recurridos.

*Número:* R-81-442      *Resuelto:* 3 de febrero de 1983

*Carmelo Guzmán Géigel* y *Julio Maymí Pagán,* abogados de los recurrentes; *José Ramón Pérez Hérnández* y *Héctor Urgell Cuebas,* abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

En *Báez Cancel* v. *Alcalde Mun. de Guaynabo,* 100 D.P.R. 982 (1972), dimos plena virtualidad a la garantía constitucional contra el discrimen por motivos de ideas políticas, Art. II, Sec. 1, de la Constitución de Puerto Rico. Nos pronunciamos vigorosamente contra esa larga y lamentable tradición a nivel municipal. Expusimos la presunción de discrimen que surge cuando, ausente un motivo racional justificativo, el·empleado despedido es sustituido por otro de diferente afiliación política, afín a la autoridad nominadora incumbente.

Hoy en día subsiste en el panorama del país la cruda práctica rechazada en *Báez Cancel,* supra, pág. 982. Sin embargo, al cabo de una década es sustituida por una rutina más sofisticada, en que se invocan razones legítimas de economía para encubrir violaciones a la Ley Núm. 5 de 14 de octubre de 1975 sobre el Personal del Servicio Público. 3 L.P.R.A. sec. 1301 *et seq.* De ese modo se propicia el patronazgo, despojo y desquite partidista (*spoil system*). Esa dinámica negativa, característica más bien del revanchismo político de nuestros tiempos, "requiere que los tribunales escudriñen la prueba para asegurarse [de] que verdaderamente no hay discrimen". *Báez Cancel,* supra, pág. 990. El fenómeno no es exclusivo de ningún partido político en particular. Tomamos conocimiento judicial de las distintas causas y recursos presentados ante este foro apelativo, en que el discrimen y despido se pratican en miembros de todas las

ideologías. (¹) En última instancia, el verdadero perjudicado por actuaciones ilegales de esta índole es la ciudadanía en general, independientemente de su credo político, pues el cumplimiento de esas sentencias produce erosión y desvío sustancial de fondos públicos en detrimento de los servicios esenciales.

Con esta perspectiva, examinamos los méritos del recurso. Se origina el 3 de mayo de 1978, fecha en que el Secretario del Departamento de la Vivienda, Sr. Jorge A. Pierluisi, notificó a los recurrentes —todos empleados de *carrera*— que a partir del 3 de junio quedarían cesantes en sus respectivas posiciones, debido a que la precaria situación económica de la Corporación de Renovación Urbana y Vivienda (CRUV) exigía implantar un plan de reducción de personal.

No conformes, formularon *injunction* y solicitaron reposición en sus respectivos puestos con paga y beneficios atrasados y compensación por daños. Específicamente alegaron que los demandados recurridos utilizaron el procedimiento de cesantías con el fin de discriminar, perseguir y atropellarlos por razón de sus ideas político-partidistas; que la autoridad nominadora no agotó todos los remedios disponibles antes de cesantearlos, tales como el ofrecimiento de descensos o traslados interagenciales; y que no les fue notificado el plan de cesantías adoptado, según lo exige la

(¹) R-73-188, *H. Pintado* v. *Aponte Borrero, Alcalde de Bayamón*; R-75-74, *De Jesús* v. *Fernández Corujo, Alcalde de Carolina*; *Plaza* v. *Municipio de Adjuntas*, 104 D.P.R. 905 (1976); *Delbrey* v. *Municipio de Carolina*, 111 D.P.R. 492 (1981); *Pizarro* v. *Municipio de Carolina*, 112 D.P.R. 822 (1982); R-80-46, *Estrada de Irizarry y Pérez Varela* v. *Depto. de Servicios Sociales*; R-80-104, *Nieves Román* v. *Acevedo Moreno et al.*; R-80-178, *Méndez Pérez et al.* v. *Municipio de Moca*; O-80-255, *Marrero* v. *Municipio de Toa Baja*; R-80-439, *Muñoz Santori* v. *Depto. de Servicios Sociales*; R-80-560, *Muñoz Méndez et al.* v. *Depto. de Servicios Sociales*; *Ramos* v. *Srio. de Comercio*, 112 D.P.R. 514 (1982); *Municipio de Mayagüez* v. *Rivera*, 113 D.P.R. 467 (1982); R-82-47, *Cortés y otros* v. *A. González Pérez, Alcalde de Aguadilla*; R-82-268, *Romero Pérez* v. *A. González Pérez, Alcalde de Aguadilla*; O-82-458, *Cortés Rodríguez* v. *Municipio de Ciales*; O-82-460, *Barletta Blasini* v. *A. González Pérez, Alcalde de Aguadilla*; R-82-267, *Juan Sosa Nieves* v. *Alcalde de Aguadilla.*

reglamentación pertinente. Algunos adujeron que fueron trasladados a programas en que luego fueron dejados cesantes por eliminación de puestos y que fueron colocados en desventaja al ocupar posiciones donde tenían menos años acumulados en el servicio.

Oportunamente el tribunal dictó sentencia. En cuanto a los aquí recurrentes declaró sin lugar la demanda.[2] Revisamos. Los señalamientos son susceptibles de agruparse en dos tópicos: incumplimiento de la Ley de Personal y existencia de discrimen político.[3]

---

[2] El codemandante Efrén Ortiz Sierra prevaleció en instancia.

[3] Señalan los siguientes errores:

"1. Erró el Tribunal Sentenciador al determinar como Cuestión de Hecho que el Plan de Cesantías del Departamento de la Vivienda en este caso fue sometido a la Oficina Central de Administración de Personal (OCAP); aprobado por su director y coincidiendo el mismo con la nueva estructura aprobada por el Negociado de Presupuesto. (Véase Determinación de Hechos Número 5 de la Sentencia en el caso objeto de esta Petición.)

"2. Erró el Tribunal Sentenciador al concluir que las cesantías decretadas contra los aquí Recurrentes, se efectuaron conforme a derecho.

"3. Erró el Tribunal Sentenciador al concluir que en el presente caso se siguió el procedimiento estatutario para el despido, en su aspecto 'fundamental' [*sic*].

"4. Erró el Tribunal Sentenciador al concluir que el despido no obedeció a razones político partidista y sí a razones económicas.

"5. Erró el Tribunal Sentenciador al concluir que los demandados no sustituyeron a los demandantes con personas bajo el Plan CETA.

"6. Erró el Tribunal Sentenciador al concluir que el demandante Recurrente, Oscar Olivieri Morales, no fue sustituido o reemplazado por otras personas empleadas bajo el Plan CETA.

"7. Erró el Tribunal Sentenciador al aplicar estrictamente el criterio de 'sustitución' en *Báez Cancel* v. *Rivera Pérez*, 100 D.P.R. 982, a los Recurrentes Olivieri Morales, Díaz Monge, Torres Cintrón, Rodríguez Guzmán y Ramos Rodríguez.

"8. Erró el Tribunal Sentenciador al no concluir que correspondía en el caso de José Torres Cintrón, su reposición al igual que la ordenó en el caso de Efrén Ortiz Sierra.

"9. Erró el Tribunal Sentenciador al concluir que la inclusión en el Registro de Elegibles de los empleados cesanteados [*sic*] requiere acción por parte de éstos, solicitando [*sic*] se les incluya en los registros correspondientes a la clase de puestos que ocupaban."

I

*Trámites bajo la Ley de Personal*

Los recurrentes aducen que el Departamento de la Vivienda, como autoridad nominadora sujeta a la jurisdicción de la Ley de Personal, no sometió el plan de cesantías a la Oficina Central de Administración de Personal (OCAP) y cuestionan su aprobación por parte del director de ese organismo rector. Ambos requisitos son exigidos por el estatuto de personal. El juzgador de los hechos, al apreciar la prueba, concluyó que se observaron estas exigencias. En su comparecencia ante nos nada nuevo aportan, ni discuten los méritos del alegado error. El esfuerzo de los demandantes tendente a que variemos esa conclusión resulta infructuoso.

Señalan, además, que la reorganización efectuada debió necesariamente tener carácter prospectivo porque el presupuesto vigente —año fiscal 1977-78— se había aprobado de conformidad con lo que había sometido la pasada administración de ese Departamento y éstos habían provisto los fondos para pagar los servicios de los empleados cesanteados. Concluyen que siempre que ocurre un cambio de administración gubernamental la administración entrante tiene que funcionar durante los primeros meses de su gestión con el presupuesto que fue sometido para ese cuatrienio por la administración saliente.

Si bien es cierto que la vigencia de un presupuesto correspondiente al último año de un cuatrienio se extiende hasta el 30 de junio del año en cuestión, no existe precepto estatutario alguno que impida a una agencia hacer los ajustes y cambios necesarios en su presupuesto vigente. Ello se puede deber a múltiples circunstancias, tales como incurrimiento de gastos imprevistos, mala planificación o administración, insuficiencia de fondos y otros. Los recurrentes no nos ilustran persuasivamente al respecto.

## II

Aclarados estos extremos, notamos que se impone la revocación de la sentencia por varios fundamentos. Analicémoslos.

A— *Nulidad en el método seguido para proceder a decretar las cesantías*

■ La Sec. 4.6 de la Ley de Personal, 3 L.P.R.A. sec. 1336, y su Reglamento, Áreas Esenciales al Principio de Mérito, Sec. 9.3(1), sobre cesantías debidas a falta de trabajo o fondos, prescribe un método a base de prelación. El método que se adopte "se pondrá en conocimiento de los empleados". Establece que serán separados primeramente los empleados transitorios, luego los probatorios y, por último, los regulares. Además preceptúa que para decretar el orden dentro de cada uno de los grupos de empleados se considerará el desempeño de sus funciones —Sec. 9.3(1)(c)(1)— y que, a falta de información válida para precisar este elemento, el factor determinante será el tiempo en el servicio —Sec. 9.3(1)(c)(2)— de manera que la persona de más reciente nombramiento cesará primero.

En el caso de autos la autoridad nominadora se vio en la obligación de utilizar el factor de antigüedad en el trabajo por carecer del elemento de eficiencia, debido a que en la agencia no existía método de evaluación de empleados.

■ Ahora bien, notamos que es meritoria la contención de los recurrentes de que se violó el debido proceso al no darse cumplimiento estricto a la notificación que exige la Sec. 9.3(1)(a) del Reglamento de Personal, la cual establece que el método que se adopte para decretar las cesantías *se pondrá en conocimiento de los empleados*. Adviértase que la Sec. 9.3(1)(f) dispone expresamente que ninguna cesantía "será efectiva a menos que se cumpla con el requisito de notificación en la forma aquí establecida". De una lectura integral de las citadas secciones surge claramente que esta

sanción contra la actuación desautorizada por parte de la autoridad nominadora comprende la notificación del plan de cesantías y del derecho de apelación, y el apercibimiento por escrito con 30 días de antelación a la fecha en que habrán de quedar cesantes. La agencia venía obligada a observar rigurosamente ese trámite. *García* v. *Adm. del Derecho al Trabajo*, 108 D.P.R. 53 (1978).

A igual solución arribamos en *Pizarro* v. *Municipio de Carolina*, 112 D.P.R. 822 (1982). Allí expusimos los fundamentos para que se adopte y se divulgue el plan de cesantías. "El presente caso dramatiza el propósito y la importancia de este requisito. Independientemente de cuán justificadas pudieran haber estado unas cesantías desde el punto de vista económico, la política pública a favor de la implementación del sistema de mérito exige que haya constancia de que al eliminarse uno o más puestos en una clase se dejarán cesantes y serán retenidas las personas indicadas de acuerdo con los criterios objetivos que el sistema de mérito encarna. Es igualmente vital que todos los empleados públicos posean conocimiento previo del método a seguirse para que puedan defender adecuadamente sus derechos, los cuales son relativos a los derechos de los demás. La ausencia de constancia clara, objetiva y difundida de los criterios para determinar quiénes habrán de quedar cesantes crea inseguridades y siembra dudas no sólo sobre la legitimidad de cada cesantía particular, sino sobre la validez y necesidad de la decisión de decretar cesantías en general. Ello, a su vez, fomenta la profusión de pleitos y causa erosión y disgusto entre los empleados y es contrario a los objetivos de la Asamblea Legislativa en lograr la mayor uniformidad, justicia, equidad, armonía, satisfacción y continuidad, y regularidad de los servicios públicos posibles. Sec. 2.2 (3 L.P.R.A. sec. 1312)". Págs. 829–830.

B— *No incluir a los empleados cesanteados en el registro de elegibles*

Sobre este extremo el tribunal a quo determinó que "[l]a no inclusión en el registro de elegibles de los empleados cesanteados requiere acción por parte de éstos solicitando que se les incluya en el registro correspondiente a la clase de puestos que ocupaban con carácter regular u otros similares".

La contención de la parte recurrida es a los efectos de que carece de méritos la alegación de los demandantes, pues la Sec. 15.4 del Reglamento de Personal: Administración Central no es de aplicación a los Administradores Individuales debido a que ellos llevan a cabo su propio reclutamiento, convocatorias, registros de elegibles y de reingreso con absoluta independencia de la Oficina Central de Administración de Personal (OCAP). Exponen que "[e]l solo hecho de que los recurrentes consideren que la autoridad nominadora venía obligada motu prop[r]io a incluir los nombres de los empleados cesanteados en los registros de reingreso correspondientes sin que tuviera que haber acción afirmativa por parte de los empleados no vicia de ninguna manera, a nuestro juicio, el procedimiento de cesantías seguido por la Autoridad Nominadora. Nótese que la acción de personal sobre inclusión de nombres en registros es una posterior al procedimiento de cesantía como tal el punto clave que se ha estado dilucidando es si las cesantías decretadas estuvieron justificadas".

De otro lado, los recurrentes sostienen que dicha omisión les negó la oportunidad de ser seleccionados en lugar de los que antes trabajaban para el Plan CETA, entre otros, y que luego fueron nombrados regulares.

Es política pública del Estado Libre Asociado de Puerto Rico establecer el mérito como el principio que regirá todo el servicio público. 3 L.P.R.A. sec. 1311. La retención de empleados de carrera es parte indispensable de este principio, al igual que la clasificación de puestos, reclu-

tamiento, selección, ascensos, traslados, descensos y adiestramiento. 3 L.P.R.A. sec. 1331. Véase *Díaz de Llovet* v. *Gobernador*, 112 D.P.R. 747 (1982). La Ley de Personal en su Sec. 5.18 (4) establece que:

(1) Los empleados regulares . . . que sean cesanteados por eliminación de puestos, *tendrán derecho* a que sus nombres se incluyan en el registro de elegibles correspondientes a la clase de puesto que ocupaban.

.    .    .    .    .    .    .    .

.    .    .    .    .    .    .    .

(4) Las condiciones, el orden y la forma en que los nombres han de colocarse en el registro será establecida por normas que se promulguen al efecto. 3 L.P.R.A. sec. 1358.

■ Bajo las disposiciones del anterior Reglamento de Personal Regular de la CRUV (5) no existía norma alguna que pautara lo antes transcrito. Sin embargo, un Reglamento de Personal de la Agencia —promulgado el 12 de noviembre de 1976 y declarado nulo el 18 de febrero de 1977— contemplaba en su Art. XIV B(3) la inclusión *mandatoria* en un registro de elegibles, de los empleados cesanteados por eliminación de puestos. El reglamento actualmente vigente, en su Sec. 14B visualiza un procedimiento idéntico al mencionado. (6)

De lo antes expuesto es imperativo concluir que el mandato legislativo de adoptar, por parte de los administradores individuales, un reglamento en protección de las Áreas Esenciales al Principio de Mérito, no fue observado. (7)

---

(4) Enmendada el 17 de julio de 1979 mediante la Ley Núm. 114.

(5) Promulgado el 16 de octubre de 1968 al amparo de las Leyes Núms. 126 del 6 de mayo de 1938 y 88 del 22 de junio de 1957, según enmendadas.

(6) Promulgado el 13 de junio de 1978 bajo las disposiciones de las Secs. 5.7 y 5.13 de la Ley Núm. 5 del 14 de octubre de 1975.

(7) En ausencia de norma aplicable a los hechos hoy en controversia, nos gobernamos por el Reglamento de Personal: Áreas Esenciales al Principio de

El perjuicio es evidente. Obsérvese que las posibilidades de haber sido seleccionados los recurrentes hubiesen sido mayores si tomamos en consideración las opciones contempladas en la propia Ley de Personal: a- que una persona se acoja voluntariamente a un descenso según la Sec. 4.4(6), 3 L.P.R.A. sec. 1334(6), o b- viabilizar un traslado a otra agencia dentro del servicio público según la Sec. 4.4(4), 3 L.P.R.A. sec. 1334(4). El incumplimiento de la norma redujo a cero las oportunidades de los recurrentes. La experiencia que habían obtenido a través de sus largos años de servicio resultó inoperante. El caso del recurrente Olivieri es ilustrativo. Razonablemente hubiese sido seleccionado para la posición de Oficinista IV en la cual se nombró a la Sra. Delia Sánchez Resto el día 2 de octubre de 1978, o mediante descenso pudo haber sido designado en la posición de Oficinista III en la cual se nombró a la Sra. Myrna López Toledo el día 1ro de septiembre del mismo año, o en una idéntica posición a la anterior en donde se nombró a la Sra. Sonia Rivera Jiménez el día 1ro de febrero de 1980. De igual manera los restantes recurrentes pudieron haber sido considerados y hasta seleccionados.

C— *Discrimen político*

Al igual que en *Pizarro*, supra, pág. 830, "[e]sta decisión que resuelve que las cesantías fueron decretadas sin observarse la Ley de Personal y su reglamento guarda íntima relación con la tesis de que las mismas obedecieron a motivos discriminatorios. Todos [los cesanteados] eran afiliados al P.P.D. [o independentistas].[(8)] Precisamente el

---

Mérito, debido a que éste define el principio de mérito en las áreas que le son consustanciales e indispensables. Contiene el diseño de la estructura administrativa en la cual ha de asentarse y crecer el sistema de administración de personal para todo el Gobierno del Estado Libre Asociado de Puerto Rico, inclusive sus corporaciones públicas, instrumentalidades y municipios. Véase el Reglamento de Personal: Áreas Esenciales al Principio de Mérito, 1976, pág. 2.

(8) Por vía de ejemplo, *Oscar Olivieri* se desempeñaba en la División de Desembolsos de la CRUV como Oficinista IV al momento de ser cesanteado, había acumulado 20 años en el servicio público y fue sustituido por empleados irregu-

incumplimiento de los criterios *objetivos* exigidos por la Ley y su reglamento para implementar válidamente cesantías por razones económicas tiende a sostener su carácter discriminatorio".

▪ Distinto al ilustrado foro de instancia —que no pudo determinar que las cesantías fueron motivadas políticamente— en las circunstancias apuntadas, la pauta tiende a sostener la existencia de tal discrimen sofisticadamente encubierto. La existencia de una crisis financiera no puede servir de puente para amparar y justificar discrímenes políticos. El análisis integral satisface a plenitud la conciencia imparcial judicial sobre el *quantum* de la prueba requerido, sin que sea menester ulteriores lucubraciones. Véase *Navedo* v. *Municipio de Barceloneta*, 113 D.P.R. 421 (1982).

*Se dictará sentencia que modifique la del Tribunal Superior, Sala de San Juan, a los fines de declarar con lugar la demanda en cuanto a los recurrentes y ordenar a los demandados reponerlos como empleados de carrera en el Departamento de la Vivienda y en la Corporación de Renovación Urbana y Vivienda con los sueldos correspondientes. Se les ordena, además, el pago de los haberes que hubiesen*

---

lares reclutados bajo el Plan CETA. Se retuvo a empleados regulares con su misma clasificación pero de menos antigüedad en el trabajo. Pertenece al Partido Popular Democrático y participaba en actividades de dicho partido durante su tiempo libre. Trabajó en la Policía de Puerto Rico y, como parte de sus funciones, se desempeñó como escolta del entonces Gobernador Muñoz Marín. *Eddie Suárez Delgado* era Delineante III desde el 1970. Recibió beca para estudios, de la Agencia. Obtuvo el grado de Agrimensor y aprobó la reválida. Luego de solicitar un puesto de agrimensor fue cesanteado, debido a su afiliación al movimiento independentista del país, hecho conocido, y por ser miembro de la Hermandad de Empleados de la CRUV. *Félix Ramos Rodríguez* trabajó en el servicio público por espacio de 11 años hasta que su plaza fue eliminada. No se le brindó oportunidad de retención mediante descenso o traslado. Ocupaba un puesto de Calculista III. Era miembro de la Hermandad de Empleados y creyente de la ideología de la independencia. *Dolores Rodríguez y Wilfredo Ramos Colón.* La señora Rodríguez fue reemplazada con personal irregular adscrito al Plan CETA y se desempeñaba como Operadora I de Máquina Duplicadora. El señor Ramos Colón fue Delineante III por diez (10) años. Fue eliminado de su puesto por alegadamente no ser imprescindible, cuando de hecho se encontraba trabajando activamente en el diseño del Proyecto de La Puntilla en el Viejo San Juan, el cual, para esa fecha, no había sido terminado.

*dejado de percibir durante dicha cesantía, debiendo descontarse cualquier compensación recibida de agencias, instrumentalidades o dependencias gubernamentales durante ese período. Estrella v. Municipio de Luquillo,* 113 D.P.R. 617 (1982).

El Juez Asociado Señor Rebollo López emitió opinión disidente, a la cual se unen los Jueces Asociados Señores Dávila e Irizarry Yunqué.

—O—

Opinión disidente del Juez Asociado Señor Rebollo López a la cual se unen los Jueces Asociados Señores Dávila e Irizarry Yunqué.

I

Es correcto que los acontecimientos y cambios políticos ocurridos en Puerto Rico durante los últimos catorce años han causado una indeseada politización en nuestro diario vivir.

Todavía peor que lo anterior —si ello es posible— es el hecho de que dichos acontecimientos han causado en nuestro pueblo una "histeria" tal, que hemos llegado a convencernos de que *todo* está politizado: una persona actúa de una forma u otra o expresa determinada opinión y nadie piensa, ni tan siquiera por un momento, que esa persona actúa y piensa de esa forma porque honesta y sinceramente cree en ello; todos inmediatamente concluyen que la actuación o el pensamiento de esa persona está políticamente motivado. En otras palabras, hemos llegado al punto de "ver" el "fantasma de la política" en todo cuanto hacen y dicen nuestros conciudadanos.

Ante esta deplorable situación los tribunales de justicia tienen, hoy más que nunca, el deber ineludible de mantener su ecuanimidad y serenidad para así poder tratar de ponerle coto a esta "histeria" que está afectando todo lo que nos rodea. Con ello en mente, examinemos la opinión emitida por la mayoría de este Tribunal en el presente caso.

Este Tribunal, aplicando *retroactivamente* dos de sus decisiones, determina que el señor Secretario del Departamento de la Vivienda de Puerto Rico incurrió —en el proceso de cesantear un grupo de empleados de dicho Departamento por falta de fondos— en dos *supuestas violaciones* a la Ley de Personal y, utilizando entonces *como* *"base"* dicha determinación, concluye que hubo discrimen político en las referidas cesantías.

Al así hacerlo, la opinión de la mayoría —basada en una escueta y no probada alegación de discrimen político de unos empleados— hace virtualmente imposible el que en Puerto Rico un jefe de agencia, en el desempeño responsable de su cargo, pueda reducir su personal no importa las razones válidas que tenga para ello y la prueba que aporte para sustanciar las mismas.

## II

Antes de entrar propiamente en materia, debe quedar claro que jamás permitiremos, en el descargo de nuestras responsabilidades, que un empleado público eficiente y responsable pierda su trabajo debido única y exclusivamente a su preferencia y/o ideología política. Para esa clase de acción despreciable no debe haber cabida en nuestro Puerto Rico; la misma merece el más completo, total y continuo repudio.

*El Gobierno del Estado Libre Asociado de Puerto Rico, sin embargo, no puede garantizarle a todo el mundo, todo el tiempo, un trabajo.* No podemos sustraernos al hecho de que, a pesar de que nuestros mejores deseos son que toda persona tenga un empleo, las realidades económicas de nuestro país en ocasiones imponen a los jefes y administradores de las distintas agencias del gobierno de Puerto Rico, en el descargo responsable de sus deberes, la triste y desagradable obligación de tener que cesantear empleados.

Cuando esas cesantías ocurren, como bien se dijo en *Báez Cancel* v. *Alcalde Mun. de Guaynabo*, 100 D.P.R. 982 (1972),

y los afectados por ellas cuestionan las razones detrás de las mismas, los tribunales de justicia tenemos el deber y la obligación de *escudriñar* la prueba en busca de posibles discrímenes, sean estos cuales fueren.

Ello no significa, sin embargo, que la "flaca y descarnada" alegación de que "me despidieron debido a discrimen político" sea suficiente, por sí sola, para derrotar la acción responsable y honesta —*respaldada con prueba al efecto*— de un jefe de agencia que, por falta de trabajo o de fondos, se ve obligado a cesantear a empleados que de otra forma no hubiera despedido. Dicho sea de paso, tampoco podemos permitir que ese "grito de discrimen político" se convierta en defensa absoluta del empleado que es cesanteado debido a incompetencia o hábitos indeseables en su trabajo.

### III

Los hechos que dan lugar al presente recurso se originan alrededor *del mes de mayo de 1978.* Debido a una alegada crisis fiscal por la cual estaba atravesando la Corporación de Renovación Urbana y Vivienda (C.R.U.V.), el ingeniero Jorge A. Pierluisi, Secretario del Departamento de la Vivienda de Puerto Rico, entendió que se hacía imperativa una reducción de personal en la C.R.U.V., y determinó llevarla a cabo utilizando el criterio de antigüedad. A esos efectos solicitó la aprobación correspondiente de la Oficina Central de Administración de Personal, petición que fue aprobada por el referido organismo administrativo.

Para mayo de 1978 la Ley de Personal del Servicio Público —Ley Núm. 5 del 14 de octubre de 1975— por medio de su Sec. 4.6 (3 L.P.R.A. sec. 1336) permitía separar del servicio público a *cualquier* empleado, sin que ello se entendiera como destitución, debido a la eliminación de puestos por falta de trabajo *o de fondos* y permitía, además, la utilización, entre otros, del factor de antigüedad como base para la separación del servicio. Por su parte, el Reglamento de Personal, en su Sec. 9.3(1)(a), requiere que

el *método* que sea adoptado —sea éste el de eficiencia o de antigüedad— se ponga "en conocimiento de los empleados". En su Sec. 9.3(1)(e), requiere que se le dé al empleado a ser cesanteado notificación "con no menos de treinta (30) días de antelación a la fecha en que habrá de quedar cesante" y que se le informe a éste de su "derecho de apelación ante la Junta"; y dispone en su Sec. 9.3(1)(f) que "[n]inguna cesantía de empleados será efectiva a menos que se cumpla con el requisito de notificación en la forma aquí establecida". Por último, tenemos que la Sec. 5.18 de la referida Ley de Personal del Servicio Público, 3 L.P.R.A. sec. 1358, *disponía para mayo de 1978,* (1) en lo pertinente, que "[l]os empleados regulares que renuncien a sus puestos o sean cesanteados por eliminación de puestos, *tendrán derecho* a que sus nombres se incluyan en el registro de elegibles correspondiente a la clase de puesto que ocupaban". (Énfasis suplido.)

Al recibir la mencionada aprobación de la Oficina Central de Administración de Personal, el ingeniero Pierluisi procedió a enviarle a los empleados afectados una carta con fecha del *2 de mayo de 1978,* la cual, en lo pertinente, dice así:

Como es de conocimiento general, el Departamento de la Vivienda ha tenido que enfrentarse a la problemática de una reorganización estructural y funcional para poder rendir un más ágil y eficiente servicio a la familia puertorriqueña. Las razones que motivan esta reorganización son las siguientes:

(1) Ajustarnos a lo estipulado en la Ley 97, que creó el Departamento de la Vivienda, aunando metas y propósitos para atacar el problema de vivienda en este país.

(2) Integrar los servicios Legales de Personal, Gerencia, Finanzas, Planificación, Presupuesto y Recursos Externos, para que las Agencias dentro del Departamento

---

(1) Dicha sección de la ley fue enmendada en 1979 para añadirle dos incisos, uno de los cuales, el número 6, dispone que "la solicitud [de] reingreso deberá radicarse en cualquier tiempo durante el período de cinco años siguientes a la fecha de separación . . .".

de la Vivienda: (CRUV, APS, Banco) puedan dedicarse por entero a hacer obra por la ciudadanía.

(3) Salvar a CRUV de una crisis fiscal tan precaria que podría llevar a la quiebra a la Agencia, y por ende afectar adversamente el Programa de Vivienda de Puerto Rico.

Desafortunadamente, su puesto quedó fuera de presupuesto en la reorganización, *y todos los funcionarios de carrera, que en igualdad de condiciones tenían su misma clasificación y sueldo los pusimos a competir en su programa de trabajo, a tono con un estudio de antigüedad cuidadosamente realizado, según lo estipulado en la Sección 9.3 de la Ley de Personal Núm. 5. En dicha competencia, usted resultó ser el más joven en cuanto a años de servicio en el Servicio Público*, además de ser infructuosos nuestros esfuerzos *por relocalizarlo dentro de nuestros dos programas no afectados por la reorganización.* Administración de Programas Sociales (Areas Operacionales) y Administración de Viviendas. *Intentamos también sin éxito inmediato de relocalizarlo en otra Agencia Gubernamental.*

Ante esta situación, efectivo 3 de mayo de 1978 usted comenzará a disfrutar de sus vacaciones regulares *las que finalizarán* [*e*]*l 2 de junio de 1978, fecha en que cesará en sus funciones en el Departamento de la Vivienda.* El balance restante de vacaciones regulares le será pagado en efectivo.

*Usted tiene derecho a apelar ante la Junta de Apelaciones de la Oficina Central de Personal, dentro de los próximos 30 días a partir del recibo de esta comunicación.* (Énfasis nuestro.)

Como vemos, en dicha carta se informa a los empleados de la crisis fiscal de la agencia y: 1– se le dan 30 días de notificación; 2– se le informa que se va a utilizar en las cesantías el *método* de antigüedad; y 3– se le apercibe e informa de su derecho de apelación. En otras palabras, el ingeniero Pierluisi cumplió con los tres requisitos que le imponían las secciones antes citadas de la Ley de Personal y su Reglamento a la fecha de la carta: 2 de mayo de 1978.

## IV

Cuestionadas dichas cesantías por los empleados afectados, el asunto llegó finalmente a los tribunales mediante la radicación, por parte de éstos, de una demanda de *injunction* —en donde, entre otras alegaciones, se hizo la de despido debido a discrimen político— y finalmente se celebraron las correspondientes vistas durante los días 10, 11 y 12 del mes de junio de 1980 ante el Hon. José A. Torres Caraballo, Juez del Tribunal Superior de Puerto Rico, Sala de San Juan, durante el transcurso de las cuales ambas partes presentaron tanto prueba testifical como documental.

Con fecha del 21 de septiembre de 1981 el referido tribunal dictó una extensa y bien razonada sentencia, mediante la cual —con excepción de uno de los empleados demandantes— declaró *sin lugar* la demanda radicada por éstos. La sentencia dictada constituye la mejor prueba de que el tribunal de instancia hizo un esfuerzo extraordinario por *escudriñar* la prueba presentada por las partes, con el propósito de hacer justicia. Inclusive, como dijimos anteriormente, el tribunal ordenó la reposición de uno de los empleados cesanteados, no por razón de que el despido hubiera obedecido a motivos políticos, sino porque el despido, en opinión de dicho tribunal, fue "innecesario y arbitrario".

Determinó el Hon. José A. Torres Caraballo, en síntesis y en lo pertinente: *1–* que en la gran mayoría de los casos, a pesar de que los empleados eran o "populares" o "independentistas", la preferencia e ideología política de los mismos no era conocida en su trabajo, por cuanto —*en palabras de los propios empleados*— dicha preferencia o ideología "la expresaba únicamente a través del voto" el día de las elecciones, "la guarda en su corazón", "nunca la manifiesta en su trabajo", o "la manifestaba sólo a quien le pregunta[ra]; *2–* que dichos empleados no fueron sustituidos; (²) y *3–* que

---

(²) En algún que otro caso, el empleado fue "sustituido" por empleados paga-

los empleados demandantes en ningún momento refutaron la *prueba* presentada por la agencia sobre la crisis fiscal por la cual atravesaba y que la obligó a cesantear a los empleados.

Demostrando un extraordinario buen juicio, expresó el tribunal de instancia —a la página 16 de su sentencia— que:

> Según se determina en *Báez Cancel* v. [*Alcalde Mun. de Guaynabo*] (100 D.P.R. 982) en relación al despido de unos empleados municipales irregulares, en ausencia de un motivo racional que justifique el despido de empleados de clara identificación político-partidista y su sustitución por otros de diferente afiliación política que resulta ser la misma de quien los despide, surge una presunción de discrimen por motivo de ideas políticas que este funcionario viene obligado a refutar. Se señala que tal situación impone a los Tribunales la obligación de escudriñar la prueba para asegurarse de que verdaderamente no hay discrimen en la actuación de la autoridad nominadora.
>
> *Entendemos que cuando existe tal motivo racional o razón válida para sostener la acción de la autoridad nominadora, bajo la misma lógica, deben estudiarse con cuidado las alegaciones de discrimen político.* En el caso ante nuestra consideración la existencia de una crisis fiscal en el Departamento de la Vivienda señalados [*sic*] por la parte demandada como fundamento para la reorganización llevada a cabo en éste, no fue rebatida. (Énfasis suplido.)

## V

No empece a que no puede aplicarse a los hechos del presente caso —por las razones correctamente expresadas a esos efectos por el tribunal de instancia— la presunción de discrimen político que establece el caso de *Báez Cancel*, supra, la opinión de la mayoría de este Tribunal, errónea-

dos con fondos federales bajo el Plan CETA (*Comprehensive Employment and Training Act*), lo que no constituyó erogación alguna de los fondos de la agencia propiamente, por cuanto dichos empleados, como se sabe, son pagados con fondos federales.

mente a nuestro juicio, llega a la conclusión de que efectivamente hubo discrimen político en los despidos aquí en controversia, a base de que determina —citando dos decisiones de este Tribunal *emitidas con posterioridad* al 2 de mayo de 1978— (³) que la agencia violó el debido proceso de ley respecto a los empleados porque: 1- no les notificó del *plan* de cesantías, y 2- no los incluyó en el registro de elegibles.

*A-* En cuanto a la *primera supuesta violación,* es importante que recordemos que la anteriormente citada Sec. 9.3(1)(a) del Reglamento de la Ley de Personal habla de la notificación del *método,* no del *plan;* y lo uno no es sinónimo de lo otro. Hay una gran diferencia en cuanto a venir obligado a notificar el *"método* de cesantías a utilizarse" y venir obligado a notificar el *"plan* de cesantías a utilizarse"; el primero se refiere al "criterio", el segundo incluye el "detalle".

Es correcto que en *García* v. *Adm. del Derecho al Trabajo,* 108 D.P.R. 53 (1978), —caso en que la agencia envuelta no informó a los empleados cesanteados de su derecho a apelar ante la Junta de Personal— este Tribunal resolvió que el procedimiento era de "estricto cumplimiento".

Igualmente es correcto que este Tribunal en *Pizarro* v. *Municipio de Carolina,* 112 D.P.R. 822 (1982), en un acto de interpretación judicial, resolvió que aun cuando la Ley habla de "método" debe entenderse "plan"; por lo que la agencia administrativa viene obligada a notificar a los empleados despedidos el *plan* de cesantías.

Sin embargo, eso *no* lo sabía el ingeniero Pierluisi para el 2 de mayo de 1978. Éste tenía la obligación de obedecer la Ley tal y como la misma leía entonces; *el ingeniero Pierluisi, sin embargo, no tenía la obligación de ser adivino.* No

---

(³) *García* v. *Adm. del Derecho al Trabajo,* 108 D.P.R. 53, fue resuelto el 27 de noviembre de 1978 y *Pizarro* v. *Municipio de Carolina,* 112 D.P.R. 822, fue resuelto el 17 de mayo de 1982.

cuestionamos la sabiduría de lo resuelto en dichos casos; sólo objetamos la aplicación retroactiva de ellos.

*B–* En cuanto a la *segunda supuesta violación* del debido proceso de ley —al no incluir motu proprio la agencia a los empleados cesanteados en el registro de elegibles— debemos recordar que la antes citada Sec. 5.18 de la Ley de Personal lo que disponía para el 2 de mayo de 1978 era que los empleados que hubieren sido cesanteados por eliminación de puestos *"tendrán derecho"* a que sus nombres se incluyan en el registro de elegibles. La opinión de la mayoría resuelve, *en el día de hoy,* que los empleados *no* tienen que solicitarlo, sino que la agencia viene obligada a hacerlo motu proprio.

Aparte de que se aplica a esta situación el argumento antes esgrimido sobre la no retroactividad de la interpretación judicial que de un estatuto pueda hacer este Tribunal, tenemos que, como dijimos en el escolio (1), la referida Sec. 5.18 fue enmendada por nuestra Legislatura en el 1979. Se le adicionó a dicha Sec. 5.18 los incisos 6 y 7. El inciso 6 dispone que:

> (6) *La solicitud a reingreso deberá radicarse* en cualquier tiempo durante el período de cinco años siguientes *a la fecha de separación;* Disponiéndose que la anterior no le será de aplicación a la situación prevista en el inciso dos (2) de esta sección, en cuyo caso *se ejercerá el derecho* en cualquier momento. (Énfasis nuestro.)

Ello es prueba irrefutable de que la intención legislativa fue lo contrario a lo que expresa la opinión de la mayoría: el empleado, una vez cesanteado, tiene que *solicitar* su reingreso; la agencia no viene en la obligación de, motu proprio, incluirlo en las listas de elegibles.

En resumen, la opinión del Tribunal en efecto determina que un jefe de agencia violó el debido proceso de ley respecto a unos empleados que cesanteó el 2 de mayo de 1978, a base de unas *interpretaciones* de un estatuto que hace este Tribunal el 17 de mayo de 1982 —cuando decidió

el caso de *Pizarro,* supra— y en el día de hoy, cuando resuelve el presente caso. Ello no creemos que sea ni justo ni razonable.

## VI

Todavía más inaceptable, sin embargo, es el hecho de que, utilizando como base la determinación de que la agencia "incurrió en dos supuestas violaciones" del debido proceso de ley —cuya determinación, *cuando menos,* es de dudosa validez— y aduciendo que ello "guarda íntima relación con la tesis de que las [cesantías] obedecieron a motivos discriminatorios", y que "la pauta tiende a sostener la existencia de tal discrimen sofisticadamente encubierto", se concluye que efectivamente hubo discrimen político en las cesantías decretadas.

## VII

Resumiendo. Se trata de un caso en que una agencia del Gobierno de Puerto Rico, debido a una crisis económica por la cual está atravesando, resuelve decretar unas cesantías. Realiza un esfuerzo genuino para cumplir con la Ley tal y como ésta se conocía al momento de las cesantías. No sustituye los empleados cesanteados, cuya ideología política desconoce. Al ser cuestionada su acción, presenta prueba —que no es refutada— de la crisis económica. Con la mera alegación de discrimen político por parte de los empleados, este Tribunal —*descartando la decisión de un juez de instancia que hizo un esfuerzo honesto por escudriñar una prueba y hacer justicia, y aplicando retroactivamente dos de sus decisiones*— determina que la agencia en controversia ha empleado una "rutina más sofisticada" para violar la Ley de Personal y en virtud de ello deja sin efecto la actuación responsable de una agencia administrativa.

¿Se necesita decir algo más al respecto?