RAMÓN DELGADO RODRÍGUEZ, peticionario, *v.* DEPARTAMENTO DE SERVICIOS CONTRA LA ADICCIÓN, recurrido.

*Número:* O-82-403          *Resuelto:* 19 de abril de 1983

---

*Diego Ledeé Bazán,* abogado del peticionario; *Luis A. Mercado,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

Ramón Delgado Rodríguez, empleado que trabajó como Especialista en Conducta Humana II en el Departamento de Servicios Contra la Adicción por espacio de casi siete años mediante contrato que era renovado anualmente, fue separado de su puesto mediante carta al efecto de fecha 19 de marzo de 1981 por la Secretaria Sila Nazario de Ferrer, en la cual se alegó, como razón para la separación, una "difícil situación presupuestaria" que confrontaba el referido Departamento.

Inconforme con dicho despido y con el procedimiento que culminó en el mismo, Delgado Rodríguez apeló ante la Junta de Apelaciones del Sistema de Administración de Personal (J.A.S.A.P.), la cual desestimó "con perjuicio" la referida apelación por dos fundamentos, a saber: 1– que el recurso interpuesto era frívolo, por cuanto, en virtud de las disposiciones de la Sec. 4.6(9) de la Ley de Personal, [1] la Secretaria del referido Departamento podía separarlo, por ser él un empleado transitorio, "en cualquier momento dentro del término de su nombramiento", y 2– que la Junta no tenía jurisdicción para entender en casos de empleados transitorios, en virtud de las disposiciones de la Sec. 7.14 de la citada Ley de Personal.

Delgado Rodríguez acudió entonces, vía revisión, ante el honorable Tribunal Superior de Puerto Rico, Sala de Caguas, el cual se negó a revisar la antes mencionada resolución de la J.A.S.A.P. Habiendo acudido ante este Tribunal mediante la correspondiente petición de *certiorari*, emitimos orden para mostrar causa. El honorable Procurador General de Puerto Rico ha comparecido en representación de la recurrida Secretaria del Departamento de Servicios contra la Adicción. Estando en condiciones de resolver, procedemos a así hacerlo.

## I

No hay duda de que el aquí peticionario, en virtud de las disposiciones de la Sec. 4.3(12) de la Ley de Personal, 3 L.P.R.A. sec. 1333(12), era un empleado transitorio. [2] Igualmente claro es el hecho de que, en vista de lo dispuesto por la Sec. 1336, inciso 9, del Tít. 3 de L.P.R.A., la Secreta-

---

[1] Ley Núm. 5 del 14 de octubre de 1975.

[2] Dispone la referida Sec. 4.3(12) que: "Las personas nombradas en puestos de duración fija tendrán status transitorio. La duración de estos nombramientos corresponderá al período por el cual se cree el puesto. Podrán efectuarse nombramientos transitorios en puestos permanentes según se determine mediante reglamento."

ria del Departamento aquí en controversia podía separar al peticionario, por ser éste precisamente un empleado con *status* transitorio, "en cualquier momento dentro del término de su nombramiento".

■ ¿Implica ello —como lo dictaminó la J.A.S.A.P.— que la autoridad nominadora o un administrador individual pueden separar de su empleo a un empleado transitorio sin que vengan obligados a observar procedimiento o normas de clase alguna? [3]

En virtud de las disposiciones del inciso 6 de la Sec. 4.6 de la Ley de Personal, 3 L.P.R.A. sec. 1336(6), y de la Sec. 9.3 del Reglamento de Personal, resolvemos que no.

La citada Sec. 9.3 —*Áreas Esenciales al Principio de Mérito*— dispone, en lo pertinente, que:

Cesantías

Se podrá separar del servicio a cualquier empleado, sin que esto se entienda como destitución:

(1) Debido a la eliminación de puestos por falta de trabajo o fondos, en cuyo caso las autoridades nominadoras procederán de la siguiente manera:

(a) Cada autoridad nominadora establecerá un método a los efectos de decretar cesantías en caso de éstas ser necesarias, el cual podrá ser revisado al inicio de cada año fiscal. Como parte de dicho método se podrá subdividir la agencia por programas, unidades, oficinas regionales u oficinas locales a los fines de identificar las jurisdicciones en las cuales habrán de decretarse las cesantías. El método que se adopte se pondrá en conocimiento de los empleados.

(b) *Serán separados en primer término los empleados transitorios que presten servicios en dicha agencia; en segundo lugar, serán separados los empleados probatorios; y en último término serán separados los empleados regulares.* Se decretarán las cesantías dentro de los grupos de empleados cuyos puestos tengan el mismo título de clasificación. A los

---

[3] Como empleado público que es, el empleado transitorio goza de la protección del "principio de mérito", principio que rige todo el servicio público y que constituye la base de la política pública del Estado Libre Asociado de Puerto Rico en materia de personal. 3 L.P.R.A. sec. 1311.

efectos de este inciso los empleados probatorios que inmediatamente antes de adquirir ese status hubieren sido empleados regulares, se considerarán como empleados regulares.

(c) *Para determinar el orden de prelación en que se decretarán las cesantías dentro de cada uno de los grupos de empleados enumerados en el inciso (b) que precede, la autoridad nominadora se ajustará a las siguientes normas:*

(1) se tomará en consideración el desempeño de las funciones, de manera que queden cesantes, en primer término los empleados menos eficientes. En casos de igualdad de eficiencia, se tomará en consideración el tiempo en el servicio de manera que queden cesantes los empleados con menos tiempo en el servicio.

(2) a falta de información válida para determinar el desempeño de las funciones, el factor determinante será el tiempo en el servicio, de manera que la persona de más reciente nombramiento en el servicio será la primera en cesar.

(d) A los fines de determinar la antigüedad se considerará todo servicio prestado en puestos, tal como se define en este Reglamento. [4] (Énfasis suplido.)

█ Una lectura de la antes transcrita disposición es suficiente para concluir que, a pesar de que la autoridad nominadora tiene el derecho, respecto a empleados transitorios, para prescindir de los servicios de éstos en cualquier momento dentro del término de sus nombramientos, *dicha autoridad nominadora, al así hacerlo, viene obligada a seguir el procedimiento y las normas establecidas en la citada Sec. 9.3 del Reglamento,* el incumplimiento de los cuales puede conllevar la nulidad de las cesantías. *Delbrey v. Municipio de Carolina,* 111 D.P.R. 492 (1981).

---

[4] Los incisos (e) y (f) de la referida sección del Reglamento requieren, respectivamente, que se le notifique al empleado a ser cesanteado con no menos de treinta días de antelación a la fecha en que habrá de quedar cesante y que ninguna cesantía será efectiva a menos que se cumpla con el requisito de notificación en la forma allí establecida.

## II

Ahora bien, ¿a qué foro debe acudir ese empleado transitorio que es separado de su empleo y que entiende que la autoridad nominadora no cumplió, al así despedirlo, con la Ley y el Reglamento de Personal?

■ Es correcto que la Sec. 7.14 de la Ley de Personal, 3 L.P.R.A. sec. 1394, dispone, en lo pertinente, que se podrá apelar ante la J.A.S.A.P. "de las acciones o decisiones de la Oficina Central, de los Administradores Individuales, y de las Autoridades Nominadoras, en los casos *y por las personas* que se especifican a continuación:

(1) En casos de destitución o suspensión de empleo y sueldo *por un empleado de carrera* que esté dentro del Sistema de Personal. . . .

(2) *Por un ciudadano,* cuando alegue que una acción o decisión que le afecta viola *su derecho a entrar* en el Sistema de Administración de Personal en cumplimiento con el principio de mérito".[5] (Énfasis suplido.)

¿Significa ello —como alega la parte recurrida en su comparecencia— que la J.A.S.A.P. no tiene jurisdicción para entender en casos de empleados transitorios por no ser éstos ni: (1) empleados de carrera, ni (2) ciudadanos fuera del sistema de personal a quienes se les ha violado su derecho a entrar en el referido sistema?

■ Resolvemos que no puede ni debe sostenerse una interpretación a esos efectos. Debemos mantener siempre presente que "al interpretar una ley hay que leerla y considerarla en su totalidad, no fraccionalmente y para encontrarle su significado, el tribunal tiene que tener en cuenta el propósito de la misma". *Cirino* v. *Fuentes Fluviales,* 91 D.P.R. 608, 616 (1964). No existe razón lógica alguna para

---

[5] Un empleado de carrera, de acuerdo con la Sec. 5.12 de la Ley de Personal, 3 L.P.R.A. sec. 1352, es aquel empleado que ha pasado por el procedimiento establecido en la Sec. 4.3 de la citada Ley, 3 L.P.R.A. sec. 1333.

impedir que sea la J.A.S.A.P. la que, en primera instancia, resuelva las controversias que puedan surgir respecto a despidos en que estén envueltos empleados transitorios. Dicho organismo administrativo tiene un conocimiento especializado (*expertise*) que hace sumamente conveniente el que sea éste el que en primera instancia entienda en dichos casos. *Febres* v. *Feijoó*, 106 D.P.R. 676, 683 (1978). En relación con esta clase de situaciones el objetivo debe ser siempre el de proveerle al servidor público un mecanismo rápido mediante el cual éste pueda resolver sus discrepancias con la agencia sin necesidad de elevar inmediatamente los procedimientos ante un tribunal, sujeto a las formalidades y trámites procesales y gastos que ello conlleva. Aparte de que resulta inaceptable que se le brinde esa oportunidad a un ciudadano que está totalmente fuera del sistema de personal y se le niegue a uno que ya está dentro del referido sistema.

Por último, queremos señalar que esa fue la intención legislativa. En el debate legislativo que se llevó a cabo el día 3 de octubre de 1975, el senador Gilberto Rivera Ortiz expresó:

> Hay otra cosa muy importante en esta ley que me parece que es digno señalar. Se crea a través de la misma una Junta de Apelaciones . . . *le provee al empleado público unas condiciones para que pueda apelar de cualquier decisión que considere equivocada con relación a su caso en particular.* (Énfasis suplido.) Borrador del Diario de Sesiones, Procedimientos y Debates de la Asamblea Legislativa; Senado, 1975, pág. 156.

Como expresáramos en *Rivera Cabrera* v. *Registrador*, 113 D.P.R. 661, 666 (1982), "La interpretación judicial debe ser ágil y no hermética en propiciar la realización del verdadero propósito de la ley y dar el pleno valor de su texto en protección del interés objeto de legislación".

Por las razones antes expresadas, *se expide el auto y se dictará sentencia en que se revoque la resolución que dictara el Hon. Tribunal Superior de Puerto Rico, Sala de Caguas,*

*de fecha 19 de mayo de 1982, y en su consecuencia se devuelve el caso a la Junta de Apelaciones del Sistema de Administración de Personal, la cual asumirá jurisdicción sobre el caso y procederá, conforme a derecho, a resolver el mismo.* (6)

El Juez Asociado Señor Negrón García concurre en el resultado con opinión.

—O—

Opinión concurrente del Juez Asociado Señor Negrón García.

El 19 de marzo de 1981 Ramón Delgado Rodríguez fue notificado por carta que, debido a la difícil situación presupuestaria, el Departamento de Servicios Contra la Adicción (D.S.C.A.) prescindiría de sus servicios efectivo el 15 de abril. Su último nombramiento, por vía de extensión y como transitorio, vencía el 31 de mayo de 1981. Estuvo ocupando la posición de Especialista en Conducta Humana II por aproximadamente cuatro años. (1)

Apeló ante la Junta de Apelaciones del Sistema de Administración de Personal (J.A.S.A.P.). Básicamente alegó ser empleado de carrera con *status* transitorio y que su cesantía era inconstitucional y contraria a la Ley y el Reglamento de Personal y el del D.S.C.A. Posteriormente mediante enmienda adujo discrimen por razones de ideas políticas. D.S.C.A. solicitó el archivo del recurso bajo el

---

(6) En *Navedo* v. *Municipio de Barceloneta*, 113 D.P.R. 421, 422 (1982), resolvimos que la Sec. 9.3 del Reglamento de Personal "es aplicable" a *empleados municipales irregulares* y que la J.A.S.A.P. tiene, y debe asumir, jurisdicción sobre casos en que este tipo de empleado público cuestiona su separación del servicio.

(1) El 28 de febrero de 1975 el señor Delgado Rodríguez recibió nombramiento *provisional* en un puesto de nueva creación bajo el Plan CETA como Especialista en Conducta Humana I, que expiró aproximadamente seis meses después: 31 de agosto. Posteriormente, el 18 de septiembre, comenzó a ocupar la misma posición mediante nueva designación. Subsiguientemente se fueron extendiendo sus nombramientos hasta la fecha en que fue separado. El 31 de marzo de 1977 fue reasignado a la posición de Especialista en Conducta Humana II.

fundamento de que la Junta carecía de jurisdicción para entender en instancias de empleados transitorios. Dicho foro rehusó intervenir y desestimó el recurso a base de que hacerlo sería incompatible con lo resuelto en *Pou Estape* v. *F.S.E.*, 108 D.P.R. 336 (1979). Estimó que, de considerarlo apropiado, el apelante podría "acudir a los Tribunales de Justicia", aunque consignó "que aun en el supuesto de que ostentáramos jurisdicción en esta apelación, la misma resulta ser frívola. El texto de la precitada Sec. 4.6(9) [de la ley, que autoriza la separación de un empleado transitorio 'en cualquier momento dentro del término de su nombramiento'] legitima la decisión ante nos apelada, convirtiendo en inmeritoria la presente causa de acción". Delgado Rodríguez presentó oportunamente escrito de revisión judicial ante el Tribunal Superior, Sala de Caguas, el cual fue declarado sin lugar.

Ante nos señala que incidió J.A.S.A.P. al declararse sin jurisdicción, motivada por una interpretación incorrecta y estrecha de la Sec. 7.14(1) —Jurisdicción Apelativa— de la Ley de Personal. El planteamiento jurisdiccional requiere una incursión en el ámbito de derechos de un empleado transitorio.

I

Un breve examen inicial de la protección brindada por la anterior Ley de Personal —Núm. 345 de 12 de mayo de 1947— y su Reglamento a los empleados que ingresaban al servicio público por un espacio de tiempo limitado nos permite ubicar en su correcta perspectiva la solución del caso.

La *ley* derogada no definía el término transitorio. Sin embargo, el Reglamento disponía que el "empleado nombrado mediante certificación de un registro para ocupar un puesto en el Servicio por Oposición *por un período fijo*" se consideraría un empleado transitorio.[2] 3 R.&R.P.R. sec. 647–1(18). Sobre el particular también disponía que:

---

[2] El nombramiento original del señor Delgado Rodríguez se caracterizó

Los puestos en los cuales se necesiten los servicios de los empleados solamente por períodos de un año o menos serán cubiertos mediante nombramientos *transitorios*. Estos nombramientos se harán mediante certificación de elegibles de los registros. La selección de un elegible para ocupar un puesto transitorio no eliminará el nombre de dicho elegible para puestos de carácter permanente. *Ningún nombramiento transitorio excederá del período original para el cual fue extendido*, excepto que si hubiere sido hecho por menos de un año, el Director podrá autorizar la ampliación de dicho nombramiento hasta el término máximo de un año cuando las necesidades del servicio así lo requieran. *Ninguna persona que haya recibido nombramiento transitorio* podrá ser nombrada para desempeñar ese mismo puesto *como empleado regular a menos que su nombre sea certificado en el orden que ocupe en el registro de elegibles correspondiente*. (Énfasis suplido.) 3 R.&R.P.R. sec. 647-78.

Se deduce, pues, que bajo la ley anterior Delgado Rodríguez no tenía derecho alguno a permanecer en su posición luego de expirado el término de su nombramiento.[3]

Sin embargo, hemos visto que ostentaba esa designación al aprobarse el nuevo estatuto de personal —Ley Núm. 5 del 14 de octubre de 1975. Es menester, pues, que exploremos qué derechos, si alguno, durante su *transición* le concedió esa pieza legislativa. Al respecto, la misma establece que "[l]os empleados que a la vigencia de esta ley estuvieren ocupando puestos mediante nombramiento transitorio o de

como "provisional". Véanse OP-15 fechadas el 28 de febrero y 18 de septiembre de 1975. Se definía el término como aquel "empleado nombrado para ocupar un puesto en el Servicio por Oposición, mediante autorización del Director *hasta* el establecimiento de un registro apropiado del cual pueda hacerse la certificación de rigor". (Énfasis suplido.) 3 R.&R.P.R. sec. 647-1(19).

Del estudio integral de su expediente de personal surge más bien su condición de empleado transitorio que provisional. Lo corrobora el hecho de que estuvo ocupando la posición por períodos *fijos* de tiempo a los cuales le sucedieron extensiones de término ascendentes a diez.

[3] En la etapa del caso los autos están huérfanos y desconocemos si su nombramiento cumplió con todos los requisitos exigidos por las normas conducentes a la selección de personal.

emergencia permanecerán en sus puestos hasta la terminación del período de nombramiento". (Énfasis suplido.) 3 L.P.R.A. sec. 1421(2). En cuanto a los empleados con *status provisional,* prescribe que "pasarán a ser empleados transitorios hasta la terminación de su nombramiento si fueran de término fijo, o hasta que sean destituidos o separados del servicio si fueran por término indefinido". 3 L.P.R.A. sec. 1421(1)(c).

Se observa, pues, que bajo las clasificaciones de transitorio o provisional Delgado Rodríguez podía ser separado *al expirar* el término de su nombramiento. Por ende, no es determinante situar al señor Delgado Rodríguez en una u otra clasificación. Bajo cualesquiera de esas categorías, antes y durante su transición, no gozaba del derecho a permanencia ni tenía expectativa legítima de retener su puesto *una vez expirado el término de su nombramiento.* Véase, *Morales Narváez* v. *Gobernador,* 112 D.P.R. 761 (1982). En esas circunstancias no estaría envuelto conflicto alguno con el principio esencial de mérito sobre *retención.* De igual modo, ausente una alegación de haber sido *sustituido* —basado o no en razones político-partidistas— tampoco estaría en controversia el principio de *selección.*

## II

Ahora bien, el récord no está claro en los siguientes extremos: (1) si la primera extensión de su nombramiento, ya vigente la Ley Núm. 5, se hizo conforme la reglamentación requerida a la agencia o por el Reglamento de Personal de la Oficina Central; (2) el carácter provisional o fijo del puesto, y si las razones de economía aducidas por la autoridad nominadora al separarlo conllevaron la eliminación del puesto; y (3) si D.S.C.A. había aprobado un plan de cesantías para tal eventualidad. Lo único claro es que durante la actual ley se le extendieron varios nombramientos. Las contestaciones a estas preguntas determinarán las consecuencias jurídicas y la solución final del caso.

En este sentido, nos preocupa sobremanera la conclusión de J.A.S.A.P. en cuanto a que la apelación resultaba ser *frívola,* debido a que la Sec. 4.6(9) del estatuto convalida la actuación de la autoridad nominadora. Reza: "Se podrá separar del servicio a cualquier empleado transitorio en cualquier momento dentro del término de su nombramiento."

En *Pizarro* v. *Municipio de Carolina,* 112 D.P.R. 822, 829 (1982), al pasar juicio sobre unas cesantías de unos jornaleros, expresamos que era de aplicación la Sec. 9.3 del Reglamento de Personal, Áreas Esenciales al Principio de Mérito, debido a que los requisitos prescritos en la citada sección para decretar cesantías "amparan tanto a los empleados *transitorios* como a los probatorios y a los regulares". (Énfasis suplido.) Puntualizamos que es política pública del Estado Libre Asociado de Puerto Rico que en el Servicio Público "sean los más aptos los que sirvan al Gobierno y que todo empleado sea . . . *retenido* en su empleo en consideración al *mérito y a la capacidad,* sin discrimen por razones de raza, color, sexo, nacimiento, edad, origen o condición social, ni por ideas políticas o religiosas". (Énfasis nuestro.) 3 L.P.R.A. sec. 1311(1).

Estos pronunciamientos responden a la visión legislativa de que *todos los empleados públicos* estarán cubiertos por un solo sistema de personal promulgado para hacer cumplir el principio de mérito. 3 L.P.R.A. sec. 1311(2). La retención fue incluida como una de sus áreas esenciales. 3 L.P.R.A. sec. 1331. Persigue alcanzar "como meta los más altos niveles de excelencia, eficiencia y productividad en el servicio público", a base de que en la administración pública rijan los criterios de mayor uniformidad, equidad y *justicia.* 3 L.P.R.A. sec. 1312 (1). A tal efecto, el estatuto le impuso la responsabilidad tanto a la Administración Central como a los Administradores Individuales de establecer los mecanismos necesarios *"para* proteger a los empleados *contra despidos y otras separaciones arbitrarias".* (Énfasis nues-

tro.) 3 L.P.R.A. sec. 1336(2). No es tan solo el interés del servidor público lo que está en juego y el estatuto quiso tutelar. La protección beneficia a ambas partes en la relación. Se aspira a que el personal gubernamental forme un cuerpo de servidores públicos eficientes. *Hermina González v. Srio. del Trabajo*, 107 D.P.R. 667 (1978). Nuestra Asamblea Legislativa se sintió movida "a reformar de manera abarcadora el sistema de personal del servicio público en 1975 [debido a] la profunda insatisfacción que el sistema entonces vigente causaba a sus integrantes". *Reyes Coreano v. Director Ejecutivo*, 110 D.P.R. 40, 45 (1980). En adición, quiso contrarrestar el desaliento que estaba minando la fe del servidor público en el sistema de mérito manifestado en la falta de excelencia en el servicio. *P.R. Asamblea Legislativa, Senado*, Informe del P. del S. 1428 del 30 de septiembre de 1975. Esa óptica legislativa nos lleva a la siguiente interrogante: ¿cuán motivado puede estar un empleado público con *status* transitorio, cuando conoce que no importa lo eficientemente que esté cumpliendo sus funciones puede ser separado en cualquier momento *sin razón alguna*? Su contestación requiere un inventario y examen de los derechos que amparan en la actualidad a un transitorio. Varias disposiciones son pertinentes.

La Sec. 4.3 del estatuto de personal dispone que "[l]as personas nombradas *en puestos de duración fija* tendrán status transitorio. *La duración de estos nombramientos corresponderá al período por el cual se cree el puesto*". (Énfasis suplido.) 3. L.P.R.A. sec. 1333(12). Observamos que el concepto transitorio está inexorablemente atado a un puesto cuyo período es limitado. El factor cronológico es el ingrediente determinante y esencial que da margen para establecer la pauta general. Sin embargo, no es absoluto. A tal efecto, por razones obvias inspiradas en una sana administración pública, el Reglamento de Personal del Departamento de Servicios Contra la Adicción,[4] aplicable al caso

---

[4] La Ley Núm. 60 del 30 de mayo de 1973 creó el Departamento de Servicios

de autos, en su Sec. 8.7 prescribe que "[l]os empleados transitorios podrán ser separados de sus puestos, *aunque* no hayan vencido los términos de sus nombramientos, *cuando sus servicios, hábitos o actitudes no fueren satisfactorios*". (Énfasis suplido.) Esta regla representa una excepción al concepto de duración absoluta, pero intrínsecamente reconoce la norma de que un empleado transitorio es acreedor a retener su empleo durante la vigencia de su nombramiento, salvo que por razones de peso se le separe antes del servicio. No obstante, notamos que con posterioridad la Ley Núm. 1 de 17 de julio de 1979 enmendó, entre otras, las Secs. 4.3(12) y 4.6 de la Ley de Personal —3 L.P.R.A. secs. 1333(12) y 1336. En lo pertinente al caso que nos ocupa, la Sec. 4.6 adicionó —como inciso noveno— que "[s]e podrá separar del servicio a cualquier empleado transitorio *en cualquier momento dentro del término de su nombramiento*. (Énfasis suplido.) Al confrontarla con el enfoque legislativo original plasmado en las Secs. 4.3 y 8.7 de la Ley y Reglamento, respectivamente, surge una aparente inconsistencia. ¿Qué interpretación debe prevalecer?

En fiel acatamiento de una correcta hermenéutica, debemos interpretar el estatuto no sólo de modo que logre un resultado cónsono a la intención legislativa —*Torres* v. *Castillo Alicea*, 111 D.P.R. 792 (1981)— sino acorde con los valores que la Ley entraña. *Badillo González* v. *F.S.E.*, 112 D.P.R. 665 (1982).

---

Contra la Adicción como agencia exenta. Facultó al Secretario de esta nueva agencia a "[n]ombrar todo el personal necesario para la operación y funcionamiento del Departamento. El nombramiento y todo lo relacionado con dicho personal se hará y regirá por las normas y reglamentos que prescriba el Secretario, conducentes a un plan análogo al que pueda estar en vigor para los empleados del Gobierno Estatal al amparo de la Ley de Personal y siguiendo las normas del sistema de mérito". 3 L.P.R.A. sec. 401f(c). Desconocemos si bajo la vigencia del derogado estatuto de personal se obedeció este mandato.

Por su parte, la Ley de Personal en su Sec. 5.7 (3 L.P.R.A. sec. 1347) establece *la obligatoriedad* por parte de los Administradores Individuales de adoptar un reglamento con relación a las áreas esenciales al principio de mérito. En cumplimiento de esa encomienda, el 11 de abril de 1979 D.S.C.A. aprobó un cuerpo de normas para administrar directamente todo lo relativo a su personal.

El diseño legislativo prevaleciente permite concluir que la condición de transitorio de un empleado no es incompatible con el concepto de empleado de carrera. Al ser seleccionado tienen que cumplirse todos los requisitos pertinentes exigidos por la Ley de Personal y el Reglamento. En este sentido el nuevo estatuto requiere que se establezca mediante reglamento los procedimientos especiales de reclutamiento y selección para puestos de duración fija, entre otros, y tan solo "[c]uando no se disponga de registros de elegibles apropiados para determinada clase de puestos y la urgencia del servicio lo justifique".[5] (Énfasis suplido.) 3 L.P.R.A. sec. 1333(11). Ausentes esas circunstancias, no puede recurrirse a un procedimiento *especial* para cubrir nombramientos transitorios, sino que es menester observar el trámite ordinario prescrito en la Sec. 7.9 del Reglamento de Personal de la Administración Central.

En el caso de la agencia aquí concernida su propio Reglamento en la Sec. 6.11 establece los procedimientos especiales para el reclutamiento y selección de transitorios. Exige, entre otros, *que en todo caso*: se asegure que los nombramientos se hagan en consideración a la idoneidad y capacidad; que el proceso de reclutamiento se anuncie utilizando los medios de comunicación más convenientes; que se establezcan listas de candidatos calificados para cada clase de puesto; que todos los candidatos reúnan los requisitos mínimos; y que la selección se haga de entre los primeros diez candidatos mejor calificados que estén disponibles en la lista de elegibles. Sobre normas análogas al personal bajo la Oficina Central, véase, *Reglamento de Personal: Áreas Esenciales al Principio de Mérito*, Sec. 7.10.

Ante este enfoque estatutario de vanguardia, no pode-

---

[5] Dispone en sus restantes incisos que:

"(b) Para puestos de trabajadores no diestros o semi-diestros.

"(c) Para garantizar igualdad de oportunidad en el empleo a participantes de programas de adiestramiento y empleo, a fin de cumplir con las metas de tales programas."

mos concebir cómo un servidor público, aun transitorio, seleccionado en consideración al mérito, y todas sus salvaguardas, puede ser removido sin justa causa de su posición en cualquier momento *durante la vigencia* de su nombramiento y, además, quede impedido de cuestionar su separación. Lo razonable y lógico es concluir que la Asamblea Legislativa se refería más bien a una separación *fundada* en causas compatibles con la retención, área esencial al principio de mérito. Como fundamentos para una separación válida, antes de expirar un nombramiento transitorio cabe invocar aquellos que dan margen a una destitución o cesantía. La primera, motivada por justa causa y la última debido, *inter alia*, a la eliminación de puestos, falta de trabajo, razones de economía, o incapacidad física o mental del empleado. 3 L.P.R.A. sec. 1336. *Cf.* Art. 8 del Reglamento del D.S.C.A. (6) El curso de acción apuntado representa la avenida lícita para que una autoridad nominadora prescinda de sus empleados transitorios. Su desviación puede conllevar que la separación sea nula. *Olivieri Morales* v. *Pierluisi,* 113 D.P.R. 790 (1983).

Finalmente, deben servir de admonición los pronunciamientos de *Pizarro,* supra, pág. 829, en cuanto a la adopción de un plan de cesantías:

> El presente caso dramatiza el propósito y la importancia de este requisito. Independientemente de cuán justificadas pudieran haber estado unas cesantías desde el punto de vista económico, la política pública a favor de la implementación del sistema de mérito exige que haya constancia de que al eliminarse uno o más puestos en una clase se dejarán cesantes y serán retenidas las personas indicadas de acuerdo con los criterios objetivos que el sistema de mérito encarna. Es igualmente vital que todos los empleados públicos posean conocimiento previo del método a seguirse para que puedan defender adecuadamente sus derechos, los cuales son rela-

---

(6) Con igual orientación examínese el Art. 9 del Reglamento de Personal: Áreas Esenciales al Principio de Mérito.

tivos a los derechos de los demás. La ausencia de constancia clara, objetiva y difundida de los criterios para determinar quiénes habrán de quedar cesantes crea inseguridades y siembra dudas no sólo sobre la legitimidad de cada cesantía particular, sino sobre la validez y necesidad de la decisión de decretar cesantías en general. Ello, a su vez, fomenta la profusión de pleitos y causa erosión y disgusto entre los empleados y es contrario a los objetivos de la Asamblea Legislativa en lograr la mayor uniformidad, justicia, equidad, armonía, satisfacción y continuidad, y regularidad de los servicios públicos posibles. Sec. 2.2 (3 L.P.R.A. sec. 1312).

Por las circunstancias apuntadas concurrimos en el resultado, devolviendo a J.A.S.A.P. el caso para ulteriores procedimientos en que las partes aclaren las interrogantes fácticas expuestas.