GLADYS RODRÍGUEZ RÍOS, demandante y recurrida, *v.* ESTADO LIBRE ASOCIADO DE PUERTO RICO y OTROS, demandados y recurrentes.

*Número:* R-84-294      *Resuelto:* 31 de enero de 1985

*Roberto Schmidt Monge, Procurador General,* y *Lirio Bernal, Procuradora General Auxiliar,* abogados de El Pueblo, recurrente; *Miguel A. Montalvo,* abogado de la recurrida.

PER CURIAM: A Gladys Rodríguez Ríos, asistente dental y secretaria, se le diagnosticó una neuralgia del trigémino. El 16 de junio de 1975 se le sometió en el Centro Médico de Mayagüez a una craneotomía post occipital derecha encaminada a cercenarle el nervio trigémino afectado.

En el curso de la operación el doctor López Lira, empleado del Centro Médico, seccionó equivocadamente la vena petrocial y el nervio auditivo derecho, lo que ocasionó una hemorragia masiva que le obligó a desistir de la intervención quirúrgica sin llegar al trigémino. Al cerrar la herida el cirujano dejó, además, algodón y fibras de hilo en el interior de la cavidad craneal, por lo que desarrolló la paciente una osteomielitis severa que pulverizó la parte operada del cráneo. La señorita Rodríguez, entonces de veintinueve años de edad, estuvo inconsciente por diecisiete días.

Al recobrar el conocimiento la paciente continuó en estado crítico. Sufría parálisis facial y de todo el lado derecho de su cuerpo, pérdida de visión, de audición y desmayos frecuentes. El 10 de septiembre de 1975 y el 17 de enero de 1976 se sometió la señorita Rodríguez a dos nuevas operaciones. Continuó en estado crítico, con pérdidas continuas del conocimiento.

Para marzo de 1977, al continuar la paciente en estado crítico, sus familiares deciden trasladarla al Massachusetts General Hospital donde permaneció hasta el 2 de mayo de 1977. Es allí donde se entera la paciente de la negligencia del doctor López Lira. El 17 de enero de 1978 la perjudicada demandó al Estado, previa notificación oportuna al Secretario de Justicia. La señorita Rodríguez sigue padeciendo al presente de parálisis facial y de todo el lado derecho. Su pérdida de visión y de audición en su ojo y oído derechos es de tal severidad que recibe los beneficios del Seguro Social federal por incapacidad permanente. Continúa sufriendo de intensos dolores.

El Tribunal Superior concluyó el 31 de mayo de 1984 que los daños sufridos por la demandante se debieron a la impericia del cirujano empleado por el Centro Médico. Condenó en

consecuencia al Estado Libre Asociado a pagarle a la demandante la suma de $150,000 por los daños físicos recibidos, $100,000 por sufrimientos y angustias mentales, $7,578.77 por gastos médicos y $166,322 en concepto de pérdida de ingreso y lucro cesante, más las costas y sin imposición de honorarios de abogado. En alzada ante nos el Estado alega que erró el tribunal de instancia al ignorar en su sentencia el límite de $75,000 fijado en la Ley Núm. 30 de 25 de septiembre de 1983.

Como se recordará, la Ley Núm. 104 de 29 de junio de 1955 (32 L.P.R.A. sec. 3077) autorizó acciones por daños fundados en culpa o negligencia de un agente del Estado hasta la suma de $15,000. De causarse daños a más de una sola persona o cuando fuesen varias las causas de acción del perjudicado, la cantidad máxima recobrable era $30,000. En *Torres* v. *Castillo Alicea*, 111 D.P.R. 792 (1981), declaramos inconstitucionales estos límites económicos por violar la cláusula de la igual protección de las leyes. Véase también, *Colón* v. *Municipio de Guayama*, 114 D.P.R. 193 (1983). La Ley Núm. 30 del 25 de septiembre de 1983 (32 L.P.R.A. sec. 3077) enmendó entonces la legislación anterior para sustituir los antiguos límites por los de $75,000 y $150,000. Las cuestiones que plantea este pleito son, por tanto, dos: ¿Se aplica la Ley Núm. 30 de 25 de septiembre de 1983 a los pleitos pendientes a la fecha de su aprobación? De aplicarse, ¿es constitucional?

La contestación a la primera pregunta es tan evidente, dado el historial legislativo del estatuto, que no tendremos que pasar juicio en este caso sobre la segunda cuestión.

■ El Art. 4 del P. de la C. 1033, de 8 de agosto de 1983, que se convertiría en la Ley Núm. 30, disponía originalmente:

Esta Ley comenzará a regir inmediatamente después de su aprobación *y sus disposiciones aplicarán a causas de acción cubiertas por sus disposiciones que estén pendientes ante el Tribunal de Primera Instancia de Puerto Rico a la fecha de su aprobación.* (Énfasis nuestro.)

Informe del P. de la C. 1033 de las Comisiones de lo Jurídico Civil y de Gobierno, pág. 5. El 15 de agosto de 1983 se enmendó este artículo para suprimir la parte objeto del énfasis y llegar a la escueta redacción actual:

Esta Ley comenzará a regir inmediatamente después de su aprobación.

Del debate que se desarrolló entonces se desprende la intención de imprimirle a la ley carácter exclusivamente prospectivo. Ésta fue la discusión pertinente en el hemiciclo de la Cámara:

Transcurrido el receso, se reanuda la sesión bajo la Presidencia Accidental del señor Cepeda García.

SR. JARABO: Señor Presidente.

SR. VICEPRESIDENTE: Señor Representante Jarabo.

SR. JARABO: Señor Presidente, quedó pospuesto en su consideración, en una sesión anterior el Proyecto de la Cámara 1033. Vamos a proponer que se traiga a la consideración del Cuerpo, en estos momentos.

SR. PRESIDENTE ACC.: Adelante.

SR. JARABO: Señor Presidente, estábamos en la consideración de la Medida y se había propuesto una enmienda por este servidor, a los efectos de que en la "Sección 4, que lee:

'Esta ley comenzará a regir inmediatamente después de su aprobación y sus disposiciones aplicarán a causa de acción cubierta por sus disposiciones que estén pendientes ante el Tribunal de Primera Instancia de Puerto Rico a la fecha de su aprobación.' Habíamos propuesto la eliminación de las líneas 6, 7, 8 y 9, luego de la palabra 'aprobación'. *De manera que, la vigencia de esta Medida que establece los límites de la responsabilidad del Estado ante demandas fuese prospectiva.* Esa era la situación parlamentaria en cuanto a este proyecto, al momento en que a solicitud del compañero Granados Navedo pospusimos la consideración del mismo. En este momento, reiteramos la enmienda propuesta y la sometemos a la consideración del Cuerpo."

SR. PRESIDENTE ACC.: Ante la consideración del Cuerpo la enmienda propuesta por el Portavoz de la Mayoría al Pro-

yecto de la Cámara 1033. Los que estén a favor, dirán sí. Los que estén en contra, dirán no. Aprobado.

Sr. Jarabo: Señor Presidente.

Sr. Presidente Acc.: Señor Representante Jarabo.

Sr. Jarabo: Señor Presidente, vamos a proponer que se apruebe el Proyecto de la Cámara 1033, según ha sido enmendado.

Sr. Presidente Acc.: Ante la consideración del Cuerpo el Proyecto de la Cámara 1033. Los que estén a favor, dirán sí. Los que estén en contra, dirán no. Aprobado. (Énfasis suplido.)

*Diario de Sesiones*, Cámara de Representantes, 17 de agosto de 1983, transcripción mecanográfica, págs. 3–5.

A la luz de este historial es claro que la Ley Núm. 30 de 25 de septiembre de 1983 tiene tan sólo aplicación prospectiva. El tribunal de instancia no estaba obligado a observar los límites económicos fijados en ella.

■ Debemos observar, por último, que la situación resultante de la inaplicabilidad de la Ley Núm. 30 a casos como el presente no es abandonar la delicada labor de fijar la cuantía de unos daños a una discreción sin freno. En *Torres* v. *Castillo Alicea*, supra, pág. 804, observamos:

Eliminado el límite compulsorio en la indemnización, queda ésta moderada por el arbitrio judicial que en cada caso habrá de estimar la intensidad del agravio y la motivación del autor del acto dañoso en la totalidad de factores determinantes de la cuantía de compensación, de modo que dentro del justo principio de reparación no adquiera ésta naturaleza punitiva contra toda la sociedad que ha de absorber el costo de la negligencia.

Examinados cuidadosamente los autos, *estimamos que las cantidades concedidas guardan la necesaria proporción con los extensos daños sufridos. Se confirmará, en consecuencia, la sentencia recurrida.*

El Juez Asociado Señor Rebollo López no intervino.